UNITED STATES of America,
Plaintiff-Appellee,

v.

Bennie MITCHELL,
Defendant-Appellant.

No. 84–1396.

United States Court of Appeals,
Tenth Circuit.

Feb. 11, 1986.

James F. Robinson, Asst. U.S. Atty. (William S. Price, U.S. Atty., with him on brief), Oklahoma City, Okl., for plaintiff-appellee.

Mark A. Lapidus, Denver, Colo., for defendant-appellant.

Before SEYMOUR and McWILLIAMS, Circuit Judges, and WINDER, District Judge [*].

WINDER, District Judge.

The appellant, Bennie Mitchell, was convicted after jury trial of one count of possession of Phencyclidine (PCP) with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The appellant contends that the trial court committed error in not suppressing and excluding evidence allegedly obtained as the result of an illegal search and seizure.

On November 29, 1983 officers from the Oklahoma City Police Department, acting with an undercover informant, purchased two cigarettes dipped in PCP at two houses in Oklahoma City. Each transaction took place in less than two minutes time. The houses were apparently residences that were fifty to seventy-five yards apart with an open field between the houses. The police, three hours later, obtained from a state judge search warrants for the premises. The police divided up into two teams and simultaneously executed the warrants at each house.

The appellant was on the premises of one of the houses, and in the course of the

---

[*] Honorable David K. Winder, United States District Judge for the District of Utah, sitting by designation.

search a small bottle of PCP was taken from the appellant's person.

Prior to trial appellant filed a motion to suppress the PCP contending it was illegally seized from his person. A memorandum was filed in support of appellant's motion. The memorandum raised only the question of whether the officers executing the warrant at the premises, where the appellant was located, violated the appellant's rights by the improper execution of the warrant by not giving adequate warning before breaking and entering the premises. The memorandum addressed state and federal statutes and decisions on the notice required before executing a search warrant and contended the warrant in this case was illegally executed. The appellant makes the same claim before this court, but in addition, contends that the search of his person, during which the PCP was found, was also illegal.

The trial court held a hearing on the appellant's motion to suppress. The only witness to testify for the government was Officer Clifford Lee of the Oklahoma City Police Department. He testified that after obtaining the search warrant he and other officers approached the premises where appellant was present. Officer Lee was in charge. He stated he knocked on the door and yelled "Police. We have a search warrant." He waited a few seconds, three to five seconds, and no one answered the door. He heard sounds of people moving inside the house. The sounds suggested the occupants were not moving towards the door. Officer Lee and the other officers then broke open the door and entered. The door had been secured with a metal rod. As the officers entered people were moving back towards the kitchen area to the rear of the premises. Eventually appellant was searched by another officer. Officer Lee did not observe the search.

John Rogers testified for the appellant that he was on the premises at the time of the entry and that he heard nothing prior to the officers' entry. He claimed the only noise he heard was the noise of the officer's entry.

The trial judge made findings, based on the evidence at the suppression hearing, that the police entered with a valid warrant, that prior to entry they announced their identity and the fact that they were in possession of a search warrant, that the police received no response and heard movements leading the police to believe the persons inside were moving away from the door, at which point the police entered. The Court also concluded the entry was "under exigent circumstances" especially because of the "easily disposable nature of the contraband ..." The trial court denied the motion to suppress. Thereafter the Court made written findings to the same effect. The Court concluded:

"In view of the Detective Lea's (sic) announcement, the sounds he heard, and the readily disposable nature of the contraband named in the warrant, the entry made by Detective Lea (sic) was permissible and the search constituted a valid execution of a valid search warrant."

The appellant contends the entry violated 22 Okla.Stat. § 1228.[1] However, we need not consider whether the Oklahoma statute was satisfied or not, although the trial court's findings would appear to justify a conclusion that the officers' conduct was compatible with the interpretation given to the statute by the Oklahoma courts. c.f. *Davis v. State*, 560 P.2d 1051 (Okla.Cr.1977). The issue in this case is one under the Fourth Amendment and the exclusion of evidence would only be warranted if there were a violation of the Constitution of the United States.[2] Although in *Miller v. United States*, 357 U.S. 301,

---

**1.** "The officer may break open an outer or inner door or window of a house, or any part of the house, or anything therein, to execute the warrant, if, after notice of his authority and purpose he be refused admittance."

**2.** In, *Mason v. United States*, 719 F.2d 1485 (10th Cir.1983) we considered the validity of a search involved in a federal prosecution by reference to Wyoming law. However, both the government and the defendant asserted that Wyoming law governed.

305, 78 S.Ct. 1190, 1193, 2 L.Ed.2d 1332 (1950) the Supreme Court did reference local law as relevant to the arrest authority of state police officers making an arrest for violation of a federal law, the court has since referred to the constitutional dimension of knock and announce requirements. In, *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968) the Supreme Court noted the relevant federal statute, 18 U.S.C. § 3109, on the use of force before entering a home to execute a search warrant was a codification of the traditional Anglo-American rule and referred to it as embodying "fundamental values" Id. p. 589, 88 S.Ct. at p. 1758. In, *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), where state officers entered premises to search for narcotics, the Court said that "admissibility is governed by constitutional standards." Id. p. 39, 83 S.Ct. at p. 1632–33. The Court expressly recognized an exception to the notice requirements for exigent circumstances and this position was suggested as proper under appropriate circumstances for federal officers acting under 18 U.S.C. § 3109. The standard for state officers is therefore one of reasonableness under the Fourth Amendment. *United States v. Valenzuela*, 596 F.2d 824 (9th Cir.1979) *cert. denied* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1070. In, *United States v. Baker*, 638 F.2d 198, 202 (10th Cir.1980) this court, in a similar situation to the facts of this case, said the question was one of whether the officers' conduct was reasonable under the Fourth Amendment. The case also arose in Oklahoma and the court observed:

"Appellants have not suggested that applicable state law places more restrictive constraints on officers executing a search warrant than does the Fourth Amendment. We therefore do not decide whether the evidence seized under this search warrant would properly have been suppressed had the state search that produced it failed to meet anymore demanding state standards."

In this case, the officers gave notice and announced the authority of the search warrant. Only after it became apparent that the movement of the occupants was not towards the door, and that exigent circumstances existed, did the officers break and enter. Under very similar facts in *United States v. Baker*, supra, this court upheld the entry:

While the record does suggest on the basis of one officer's testimony that the execution of the warrant may have been unlawful, it also contains testimony from another officer and a person who had been inside the residence that the officers did knock and announce their authority, whereupon they heard such scuffling from inside the residence as to constitute exigent circumstances that would justify immediate entry. See *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *United States v. Clemons*, 503 F.2d 486 (8th Cir.1974); *United States v. Manning*, 448 F.2d 992 (2d Cir.) (en banc), cert. denied, 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971). Under these circumstances, we conclude that there was enough evidence before the trial judge to satisfy him that the warrant was properly executed. 638 F.2d pp. 202–203.

See also *United States v. Coffman*, 638 F.2d 192 (10th Cir.1980); *United States v. Remigio*, 767 F.2d 730 (10th Cir.1985). Under the circumstances the trial court's finding in this case was proper and the entry to execute the warrant lawful.

Appellant also contends that during the execution of the search warrant, the appellant was improperly subjected to a "pat down" frisk and the eventual seizure from his person of the bottle of PCP. Appellant contends the police conduct violated his Fourth Amendment rights and was contrary to the decision of the United States Supreme Court in *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In *Ybarra v. Illinois*, supra, the Court held that a frisk by police executing a search warrant of patrons in a public bar and resultant seizure of contraband violated the Fourth Amendment absent justification for the frisk as required by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d

889 (1968). The court found there was "no reasonable belief" the tavern patron was "armed and presently dangerous." 444 U.S. 90, 100 S.Ct. 341–42. The court stated that the mere presence of a person at the place of search does not justify the search of the person.[3] c.f. *United States v. DiRe*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Appellant contends he was merely present on the premises and was unjustifiably subjected to a pat down search. This court has held, where the record has shown such conditions of a search, that evidence obtained from such a search must be suppressed. In, *United States v. Ward*, 682 F.2d 876 (10th Cir.1982) we held a search pursuant to a warrant for wagering materials could not justify a pat down search of a person on the premises.

Although Agent Henry had probable cause to believe that Ward was committing a federal offense by engaging in bookmaking without first acquiring a wagering stamp, the initial frisk of Ward was not supported by a reasonable suspicion that he was armed and presently dangerous. Accordingly, and inasmuch as Ward was not arrested, the seizure of the contents of his pockets, including the uncashed checks, betting slips, and $499 was not constitutionally permissible. This holding is dictated by *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).

In, *United States v. Sporleder*, 635 F.2d 809 (10th Cir.1980) the same conclusion was reached. Recently in *United States v. 3,799.00 in U.S. Currency*, 684 F.2d 674 (10th Cir.1982) we held a similar seizure of property required suppression in a forfeiture proceeding.[4] In, *United States v. Ward*, supra, the court offered the police some advice in such situations:

"We observe that the Fourth Amendment violation found here may have been readily avoided had the search warrant been drafted to include a search of Ward's person. Henry's affidavit was certainly adequate to establish probable cause for searching both the residence and Ward's person. The search warrant, as originally drafted, included a search of Ward. This language, however, was, for some unexplained reason, deleted from the warrant."

However, in each of these cases the issue was properly raised and was squarely before the court. Such is not the situation in the present case.

The issue of the search of appellant's person and the violation of the standard in *Ybarra v. Illinois*, supra, was not raised in the trial court. Neither the appellant's motion nor the memorandum in support of the motion mentioned *Ybarra* or the issue itself. The suppression hearing before the trial judge did not address the matter and the trial judge was not asked to rule on the issue or make findings pertinent to it. He did not do so. Not even the docketing statement filed in this court referred to the issue.

 An objection to the receipt of evidence and the claim for exclusion should be specific enough to allow the trial court to address the matter. *United States v. Hubbard*, 603 F.2d 137 (10th Cir.1979); *United States v. Zang*, 703 F.2d 1186 (10th Cir. 1982); Rule 103(a)(1), Federal Rules of Evidence. Issues not raised in the trial court will not be considered for the first time on appeal. *United States v. Rowe*, 565 F.2d 635 (10th Cir.1977); *United States v. Glover*, 677 F.2d 57 (10th Cir.1982). There is no showing of any impediment to the appellant that precluded his raising the issue in the trial court. Counsel for appellant at the suppression hearing was the first per-

---

**3.** The court rejected a claim that a search of persons on the premises at the beginning of the execution of the warrant could be justified if the premises searched were compact and there is a "reasonable belief" that such persons were connected with drug trafficking and could be concealing contraband. 444 U.S. at 94, 100 S.Ct. at 344.

**4.** The Oklahoma Court of Criminal Appeals has also acknowledged that an automatic search of a person cannot follow from a search warrant for a residence where drugs are the object of the warrant. *Berle v. State*, 677 P.2d 653 (Okla.Cr. 1984).

son who referred to a "pat down" search of appellant, but did not raise an issue on the matter.

This court has often applied the general rule that if an appellant fails to alert the trial court to claimed error, the issue cannot be raised for the first time on appeal unless 'plain error' is held to apply.

\*　　\*　　\*　　\*　　\*　　\*

There are basic reasons for the rule. Unless a party is required to timely object before the trial court, the trial judge and opposing counsel are deprived of any opportunity to take corrective action, if such be required, in order to assure an orderly, fair and proper trial. Further, an aggrieved party must present his objection with clarity and specificity to the trial court in order to avoid unnecessary error from occurring. In sum, a party may not sit idly by at trial watching error being committed, and complain for the first time on appeal.

*United States v. Hubbard,* supra, 603 F.2d at 142.

Where a party has shifted his position on appeal and "advances arguments available but not presented" to the trial court "and where a party has had ample opportunity to make the point in the trial court in a timely manner" the issue will not be entertained on appeal. *United States v. Fuentes,* 563 F.2d 527, 531 (2nd Cir.1977).

■ There are several reasons why the above rule should be applied in this case. First, the search warrant, by which authority the search of the premises was made in this case, is not in the record. It cannot be determined whether it met the suggestion of this court in *United States v. Ward,* supra. Although the briefs of the parties imply the warrant only went to the premises involved, such statements do not suffice to make the record. *Daitlon, Inc. v. Allied Chemical Corp.,* 534 F.2d 221, 226 (10th Cir.1976), *cert. denied* 429 U.S. 886, 97 S.Ct. 239, 50 L.Ed.2d 168. Second, the officer who actually conducted the search of appellant did not testify at the suppression hearing. Since the issue of the search of appellant was not raised or contested there was no notice that the officer's testimony would be required. Officer Lee, who commanded the operation, testified he was not paying special attention to the frisk or arrest of the appellant. Although Officer Lee gave evidence to support a frisk of the appellant, he cannot determine why the officer who actually frisked and arrested appellant acted as he did. Third, the record itself is devoid of complete factual development to a determination of the issue. Whether appellant was subjected to a pat down search was first mentioned by his counsel and the circumstance assumed to be the case. It was never established. There was insufficient exploration or development of the circumstances of the search, the threat, or lack thereof, confronting the officers and just what took place surrounding the search of appellant to allow an accurate determination of the constitutional issue by this court. The factual record is simply inadequate to determine the issue. In its brief on appeal, the government asserts that had *Ybarra* been raised the factual differences between *Ybarra* and this case could have been shown, including knowledge of the police concerning appellant. Even so, the government liberally argues inferences from the scanty record and asserts there was no Fourth Amendment violation. It is pure speculation on the part of both parties to draw legal and factual conclusions from what is an undeveloped record. *Ybarra* presented a special fact situation. As one scholar has noted:

It is likely, however, that *Ybarra* will not be the last word on this issue. The majority, after all, only required adherence to the *Terry* reasonable suspicion formula, and did not say that assessment of the reasonableness of the suspicion may never take into account the facts attending a particular search warrant execution which properly bear upon the magnitude of the danger to the police if those present are armed. Moreover, the facts of *Ybarra* hardly made it an especially compelling case for establishing

the unique dangers which often attend warrant execution: the search warrant was executed by a contingent of eight police officers in a public place where drugs were apparently being sold retail in limited amounts.

The lower court cases since *Ybarra* do not all point in the same direction. Some of the cases indicate a willingness to allow a frisk provided the person has a somewhat stronger link to the premises than a *Ybarra* did to the bar where he was found. Other cases require considerably more than this.

LaFave, *Search and Seizure*, Vol. 2 § 4.9 (1985 Supp.) p. 60.[5] It would be pure speculation, based on the skimpy record before this court, to attempt to fashion the facts to meet the *Ybarra* issue. This case is not like that before this court in *United States v. Sporleder*, supra, where although the defendant did not raise the issue at trial, the government, at the suppression hearing, in rebuttal to defendant's claims raised the factual and legal issue and developed the record in an effort to justify the search. In this case although defense counsel alluded to a "pat down" search the propriety of the action and possible application of *Ybarra* were not developed.[6]

■ The appellant, conceding the *Ybarra* issue was probably not adequately raised below, contends that the issue should be considered under Rule 52(b), Federal Rules of Criminal Procedure, as plain error affecting "substantial rights." The first answer to this request is that the state of the record is such that we cannot say whether the error, if any, was plain. In *United States v. Baker*, supra, this court held that the failure to file an appropriate motion to suppress under Rule 12(b)(3)(f), F.R.Cr.P., precluded consideration of a claim of an illegal search in viola-

tion of the Fourth Amendment. The appellant suggested plain error. The court, in a situation analogous to this case, found the record inadequate and said:

> "Under these circumstances, we conclude that there was enough evidence before the trial judge to satisfy him that the warrant was properly executed. It was not plain error for him not to inquire further into the evidence of unlawful execution or not to exclude the evidence obtained pursuant to the execution of the warrant. 'The error, if there was one, was far from "plain." ' "

638 F.2d pp. 202–03.

■ The plain error rule applies only when the substantial rights of a party have been affected. Recently, this court denied the application of the plain error standard observing that "under the 'plain error' inquiry, reversal is mandated only to correct 'particularly egregious errors,' those errors that 'seriously effect the fairness, integrity or public reputation of judicial proceedings.' *United States v. Young*, [— U.S. ——] 105 S.Ct. 1038, 1046–47 [84 L.Ed.2d 1] (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 [102 S.Ct. 1584, 1592, 91 L.Ed.2d 816] (1982), and *United States v. Atkinson*, 297 U.S. 157, 160 [56 S.Ct. 391, 392, 80 L.Ed. 555] (1936))." *United States v. Hooks*, 780 F.2d 1526, (10th Cir.1986).

■ In this case it is the failure to apply the exclusionary rule that is claimed as plain error. Although an individual has a personal privacy interest in the protections of the Fourth Amendment, the exclusionary rule is a judicially created remedy rather than a personal constitutional right of the aggrieved individual. *United States v. Leon*, — U.S. ——, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1984); *Stone v. Powell*, 428 U.S. 465, 540, 96 S.Ct. 3037, 3073–74, 49 L.Ed.2d 1067 (1976); *United States v. Ca-*

---

**5.** Recently, the Supreme Court denied certiorari in *Michigan v. Little*, — U.S. ——, 106 S.Ct. 580, 88 L.Ed.2d 563 (1985), where a similar issue was raised. Three justices dissented from the denial of certiorari contending *Ybarra*, having occurred in a *public place* was not controlling. The justices contended a Michigan court had expanded *Ybarra* by applying it to facts similar to those in this case. Although no precedential conclusion can be drawn from the denial of

certiorari or the statements made by the dissenting justices, the activity in the case suggests Professor LaFave's comments, infra, are not without support.

**6.** A reasonable inference in this case could lead to the contention that if the *Ybarra* issue were determined by this court the government could justifiably claim to have been sandbagged.

*landra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). It is incumbent on an aggrieved party to raise the issue. The exclusionary rule under the Fourth Amendment is not intended to protect the truth finding process of the trial, but is to serve the privacy interests protected by the Fourth Amendment. *United States v. Payner,* 447 U.S. 727, 734, 100 S.Ct. 2439, 2445, 65 L.Ed.2d 468 (1980); *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); *United States v. Ward,* supra, 682 F.2d p. 881. The exclusionary rule is not, therefore, a constitutional matter that involves the plain error rule in all cases. To so hold would make superfluous the requirement of a pretrial motion to suppress. This is not to say a Fourth Amendment violation may never be plain error, however, the circumstance for such an application of the plain error rule must be more plain than in this case.

■■■ Finally, appellant contends that the failure of trial counsel [7] to raise the *Ybarra* issue in the lower court requires a finding that trial counsel was incompetent. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, such an assessment cannot be sustained. In order to establish incompetence of counsel this court would have to find from the record that counsel's performance, based on an objective standard, was deficient and deprived appellant of effective representation. The court must determine whether "in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." 104 S.Ct. 2066. The judicial scrutiny must be "highly deferential." 104 S.Ct. 2065. The court evaluating such a claim must avoid the "distorting effects of hindsight." 104 S.Ct. 2065. The record in this case will not permit that type of evaluation. There is some evidence from which an inference can be drawn that since defense counsel knew of a "pat

down" search of appellant, and no contest to the search was raised, that counsel determined the search of appellant was proper. The officer who conducted the search was not called, but defense counsel apparently had knowledge of how the search was conducted.[8] Appellant did not testify about the search. It may be that counsel had a tactical reason for not raising the *Ybarra* issue. The record does not allow the type of evaluation that the first step of an inquiry on incompetence requires. Second, the trial transcript is not before this court and it is impossible to determine what prejudice appellant suffered. Therefore, the record is inadequate to permit us to evaluate the second requirement of *Strickland v. Washington,* supra. This does not mean appellant is forever foreclosed on the issue. It simply means that a trial judge should have the opportunity to explore all the facts, as to what occurred and the motives of counsel.[9]

For the stated reasons the conviction is affirmed.

---

7. Appellant's counsel on appeal is not the same as his counsel at trial.

8. Obviously appellant would have some knowledge on this issue, but did not testify at the suppression hearing although he could have done so without his testimony being used

against him. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

9. See 28 U.S.C. § 2255, *Rock v. Zimmerman,* 586 F.Supp. 1076 (M.D.Pa.1984) (post conviction relief proper where defense counsel neglected to file a motion to suppress).