931 F.2d 900
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
James E. HUMPHREYS, Jr., Defendant-Appellant.
 No. 90-6167.
 United States Court of Appeals, Tenth Circuit.
 April 29, 1991.
 
 Before HOLLOWAY, Chief Judge, and BARRETT and TACHA, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 Defendant-appellant James E. Humphreys, Jr. appeals from the judgment and sentence entered following his conviction on nine counts of distribution of cocaine in violation of 21 U.S.C. Sec. 841(a)(1), and on one count of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 846. Humphreys advances four principal claims of error. We affirm.
 
 
 3
 1. Sufficiency of the Evidence: Humphreys argues that there was insufficient evidence to support his conviction on the cocaine distribution counts and the related conspiracy count. Viewing the evidence in the light most favorable to the government, we must determine whether it was sufficient for a rational jury to find guilt on these counts beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Dickey, 736 F.2d 571, 583 (10th Cir.1984), cert. denied, 469 U.S. 1188 (1985).
 
 
 4
 Defendant Humphreys testified in his own defense. He specifically denied that he was ever a partner of McKellar in the cocaine distribution business. IV R. 546. He denied being a drug dealer in 1985. He did use cocaine, but his life style has changed "absolutely" since then. Id. at 563. Humphreys denied any distribution of cocaine. Id. at 570.
 
 
 5
 Humphreys argues that there was no "direct evidence" that he actually distributed cocaine, pointing out that there was no evidence of surveillance of his alleged distribution activities nor evidence of controlled buys involving law enforcement officers. It is undisputed that such evidence as to Humphreys was not adduced at trial; however, this point is not fatal to the government's case. As to each distribution count, there was testimony by government witnesses (the cocaine purchasers) that was sufficient to support a finding of guilt. The fact that these witnesses were beholden to the government by virtue of plea agreements and the like is not a fatal defect. The court instructed the jury to evaluate the testimony of such witnesses with heightened caution. See I R., Doc. 93 (instruction entitled, "PLEA AGREEMENTS AND IMMUNIZED WITNESSES"). The jury was alerted to the fact that it was free to reject the testimony of these witnesses as unworthy of belief; apparently, it elected not to do so. Accordingly, we do not disturb the jury's guilty verdicts on the distribution counts for want of evidence.
 
 
 6
 Turning to the conspiracy count, Humphreys argues that there was insufficient evidence of an unlawful agreement. We disagree. There was considerable evidence tending to establish an unlawful partnership between Humphreys and McKellar (an indicted co-conspirator) to distribute cocaine. Several witnesses testified that it was their understanding that a cocaine distribution partnership existed between Humphreys and McKellar. Further, there was testimony that McKellar told his cocaine customers to contact Humphreys to purchase the drug if McKellar was unavailable, and that they did in fact contact Humphreys in McKellar's absence (at least on one occasion by means of McKellar's telephone pager number) and were successful in purchasing cocaine.[1] We are satisfied that there was sufficient evidence upon which a jury could reasonably find that Humphreys entered into an unlawful agreement to distribute cocaine. Accordingly, we find no reason to disturb the jury's guilty verdict on the conspiracy count.
 
 
 7
 2. The Jencks Act: Humphreys contends that his conviction cannot stand because the government failed to provide him with certain grand jury testimony as required by the Jencks Act, 18 U.S.C. Sec. 3500. Specifically, he contends that the government violated its Jencks Act obligation to provide him with a transcript of the testimony of FBI agent Hersley which was given before a grand jury prior to its return of the initial indictment in November 1989.[2] While acknowledging that the November testimony was subject to production under the Jencks Act, the government challenges Humphreys' assertion that it failed to produce it.
 
 
 8
 Humphreys admits that his Jencks Act contention is raised for the first time on appeal. He contends, however, that the government's alleged failure to produce the transcript adversely affected his substantial rights in that it greatly prejudiced him in the presentation of his defense,[3] and, accordingly, we should redress his harm here. We disagree. We believe that Humphreys should have made his Jencks Act contention in the first instance before the district court in the form of a motion for a new trial under Fed.R.Crim.P. 33, on the ground of newly discovered evidence.
 
 
 9
 There appears to be no dispute that the November testimony may be characterized as newly discovered evidence for purposes of Rule 33,[4] and that this method of relief was available to Humphreys. Humphreys contends that direct appeal of the judgment provided an alternate route to raise the Jencks Act issue. However, he cites no authority to support this view, and his position is contrary to the general rule for using a Rule 33 motion to present grounds for a new trial where newly discovered evidence appears. See, e.g., United States v. Boberg, 565 F.2d 1059, 1062 (8th Cir.1977); United States v. Rivera, 513 F.2d 519, 531 (2d Cir.), cert. denied, 423 U.S. 948 (1975).
 
 
 10
 We feel that this principle applies here. The Jencks Act issue did not arise until after trial, and thus we have no district court ruling relevant to the issue to review. Furthermore, even if some form of plain error analysis would ordinarily be permissible, it would be inappropriate in a case like this one where factual issues are raised by the government's refusal to concede its alleged failure to produce the Jencks material. See United States v. Mitchell, 783 F.2d 971, 976-77 (10th Cir.), cert. denied, 479 U.S. 860 (1986); United States v. Cheama, 783 F.2d 165, 168 (10th Cir.1986).
 
 
 11
 Accordingly, we do not reach the merits of the Jencks Act issue. Our disposition of this appeal and of this issue are without prejudice to Humphreys' right to raise the Jencks Act issue in a timely fashion before the district court in a motion for a new trial. See Boberg, 565 F.2d at 1063; Johnson v. United States, 290 F.2d 384, 385 (D.C.Cir.1961); 3 C. Wright, Federal Practice & Procedure Secs. 557-58 (1982) [hereinafter Federal Practice ].[5]
 
 
 12
 3. Evidentiary Rulings: Humphreys contends that the trial judge erred by admitting in evidence the testimony of Officer Dollar relating to Humphreys' arrest in August 1985 at the Dallas/Fort Worth International Airport for cocaine possession (4.3 grams) and criminal trespass, as the judge refused to admit the allegedly impeaching testimony of C. Denson Day. Day's testimony was given in a state court suppression hearing arising from the airport arrest.
 
 
 13
 Humphreys labels the Dollar testimony other-crimes evidence under Fed.R.Evid. 404(b). He appears to acknowledge that such evidence is admissible under certain circumstances, but he notes that Rule 404(b) must be construed in light of another rule of evidence, Rule 403, which provides for exclusion of certain unfairly prejudicial evidence. Absent the rectifying force of the Day testimony, says Humphreys, the admission of the Dollar testimony prejudiced him. Also, Humphreys contends that the Dollar testimony was inadmissible because the airport arrest was invalidated on Fourth Amendment grounds by a Texas appellate court.
 
 
 14
 We conclude that Humphreys' challenge to the district judge's evidentiary rulings is without merit. Humphreys must accept at least partial responsibility for any prejudice arising from the Dollar testimony. He did not object to its introduction, and apparently he was the first one to mention the airport arrest (the subject matter of the Dollar testimony), when discussing as part of his opening statement his cessation of cocaine-related activity. Consequently, Humphreys has little room to complain now regarding the admission of the Dollar testimony. E.g., United States v. Hooks, 780 F.2d 1526, 1535 (10th Cir.) (no error found as to admission of evidence suggesting that defendant had a prior arrest record where defendant subsequently elicited testimony on cross-examination that tended to establish defendant's prior arrest record), cert. denied, 475 U.S. 1128 (1986); see also United States v. Taylor, 828 F.2d 630, 633 (10th Cir.1987). Also, Humphreys failed to ensure that the Day testimony was in fact admissible under the federal rules. Specifically, he failed to ensure that Day's testimony could clear the hearsay hurdle.
 
 
 15
 Further, the state court's holding of a Fourth Amendment violation was not determinative of the admissibility in federal court of the evidence concerning the airport arrest. Upon proper objection, it was the district judge's responsibility to make an independent admissibility determination under federal law. See Elkins v. United States, 364 U.S. 206, 223-24 (1960); United States v. Garrett, 565 F.2d 1065, 1068-69 (9th Cir.1977), cert. denied, 435 U.S. 924 (1978). However, we note again that Humphreys did not object to the introduction of the Dollar testimony at trial. And it appears unlikely on these facts that the admission of this testimony--whether tainted by a Fourth Amendment violation or not--could be found to have adversely affected Humphreys' substantial rights, so as to be cognizable under the plain error doctrine. Mitchell, 783 F.2d at 977-78; see United States v. Orr, 864 F.2d 1505, 1508-09 (10th Cir.1988).
 
 
 16
 4. Sentence: The district court sentenced Humphreys to a prison term of seven years on each of the 10 counts, all terms to run concurrently, plus a three year special parole term and a special monetary assessment of $500.[6] Humphreys asserts error based on the incorporation of allegedly erroneous information into his presentence report (PSR). His PSR states that the relevant amount of cocaine for sentencing purposes is between one and five kilograms. Humphreys contends that this figure reflects pure speculation by the government as to the amount of cocaine distributed by all the members of the alleged conspiracy, not just Humphreys. Further, if the figure was intended to reflect the alleged amount of cocaine he personally distributed, says Humphreys, it is a gross overstatement.
 
 
 17
 Humphreys asserts that the case should be remanded for resentencing. To the extent that the district judge premised his sentence on this incorrect information as to the amount of cocaine at issue, Humphreys contends that his due process rights have been infringed. In any event, he maintains that remand is appropriate for correction of the PSR because his minimum period of incarceration has been improperly elevated by parole officials due to the false, overstated amount of cocaine involved.
 
 
 18
 We conclude that Humphreys has not preserved his PSR objection for appeal. Humphreys did not raise the PSR objection in the trial court. While such a misstep will not always bar review, it is undisputed here that Humphreys and his trial counsel were given an opportunity to read the PSR, and when asked by the trial judge shortly before imposition of sentence if they had any comments on it, both Humphreys and his counsel expressly responded in the negative. Humphreys has failed in his appellate brief and at oral argument to direct us to any authority favoring review under such circumstances. And authority in this circuit and elsewhere strongly suggests that review in such circumstances is inappropriate. See United States v. Rantz, 862 F.2d 808, 814-15 (10th Cir.1988), cert. denied, 489 U.S. 1089 (1989); Federal Practice, supra, Sec. 524, at 78. Accordingly, Humphreys cannot obtain relief here based on alleged inaccuracies in his PSR.
 
 
 19
 In addition, Humphreys challenges his sentence on the ground that the trial court abused its discretion by failing to give adequate consideration to (1) his relatively brief and minor role in cocaine-related activity when compared to other alleged conspirators, many of whom received less severe sentences; (2) his productive skills as a pilot and investigator; and (3) his positive lifestyle changes since breaking off his association with McKellar in the summer of 1985, such as ending his personal use of cocaine, and providing assistance to persons said to be wrongfully accused of crimes. However, again, Humphreys' claim of error must fail.
 
 
 20
 A trial judge has broad discretion to tailor criminal penalties to reflect the culpability of particular defendants, and to effectuate traditional sentencing objectives (e.g., deterrence). See United States v. Baer, 575 F.2d 1295, 1299, 1302 (10th Cir.1978). Disparities in the sentences of persons involved in related criminal conduct, alone, do not signal an abuse of discretion, where (as here) the sentences fall within statutory limits. See Welch v. United States, 371 F.2d 287, 294 (10th Cir.), cert. denied, 385 U.S. 957 (1966); Martin v. United States, 364 F.2d 894, 896 (10th Cir.1966).
 
 
 21
 In particular, we note that several of Humphreys' alleged co-conspirators elected to cooperate with the government. The trial judge could properly consider such cooperation as a factor justifying a reduction in their sentences, notwithstanding the fact that they were more extensively involved in cocaine-related activities than Humphreys. See Roberts v. United States, 445 U.S. 552, 557-58 (1980); Federal Practice, supra, Sec. 526, at 105. Further, the record indicates that in fixing the penalty, the trial judge considered Humphreys' ability to make positive contributions to society through his job skills and otherwise and his change of lifestyle. See VI R. 9, 12-14. The result reached by the trial judge after consideration of these factors does not amount to an abuse of discretion.
 
 
 22
 We have considered as well three additional contentions of error asserted by Humphreys--relating to alleged pre-indictment delay, ineffective assistance of counsel, and failure to instruct as to Humphreys' theory of defense--and find them to be wholly unsupported and without merit. Accordingly, for the reasons noted, we AFFIRM.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Illustrative of the Humphreys-McKellar partnership is the testimony of one witness who said that he obtained cocaine from Humphreys and subsequently paid the purchase price to McKellar. III R. 358-61. Another witness testified that when Humphreys distributed an unusually low grade of cocaine to her, she complained to McKellar and he made up the difference. Id. at 267, 272. Further, Humphreys supposedly stated that it was his practice to keep approximately $25 of the sales proceeds of one-eighth ounce of cocaine and give the rest of the proceeds to McKellar. Id. at 271
 
 
 [2]
 The grand jury returned a superseding indictment in January 1990. Humphreys acknowledges that pursuant to the Jencks Act he did receive grand jury testimony of Hersley given on the day this indictment was returned. However, Humphreys asserts that this January testimony only explains changes in the indictment and does not address the substantive counts in any detail
 
 
 [3]
 Principally, Humphreys contends that without the November grand jury testimony he was hampered significantly in his cross-examination and impeachment of Hersley regarding his statement at trial that McKellar and Humphreys were partners in the distribution of cocaine. It is true that Hersley did not make such a statement about their relationship in his November testimony. According to Humphreys, the Hersley statement at trial likely weighed heavily on the mind of the trial jury in view of his status as a law enforcement officer and the fact that virtually the only other testimony of similar import was given by witnesses testifying under nonprosecution or plea agreements with the government
 
 
 [4]
 Indeed, in United States v. Winner, 666 F.2d 447 (10th Cir.1981), defendant filed a motion for a new trial based on newly discovered evidence due to the government's failure to produce the grand jury testimony of a law enforcement officer as Jencks material
 
 
 [5]
 Humphreys also asserts that the government's purported failure to produce the November grand jury testimony as Jencks material violated his rights under the Confrontation Clause of the Sixth Amendment. While the Jencks Act is not "cast in constitutional terms," under certain circumstances the government's failure to produce a Jencks-type statement may violate a defendant's Sixth Amendment rights. United States v. Augenblick, 393 U.S. 348, 356 (1969). However, we believe that it would be inappropriate here as well to decide in the first instance whether such a constitutional violation has occurred. Humphreys may elect to prosecute his claim of constitutional error in the district court by way of a motion for new trial based on newly discovered evidence or a motion under 28 U.S.C. Sec. 2255. See United States v. Ostrer, 422 F.Supp. 93, 95-96 (S.D.N.Y.1976); 3 C. Wright, Federal Practice & Procedure Sec. 552 (1982)
 
 
 [6]
 Because Humphreys' involvement in cocaine-related misconduct ended before November 1, 1987, he was not subject to sentencing under the Comprehensive Crime Control Act of 1984 (as amended), which now provides for mandatory prison terms for similar drug offenses of 10 years and more