FILED
United States Court of Appeals
Tenth Circuit

**February 5, 2008**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

AMBER TEMPEST YOUNG,

      Defendant-Appellant.

No. 07-4060

(D.C. No. 2:06-CR-37-TC)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, SEYMOUR,** and **LUCERO**, Circuit Judges.

Defendant-Appellant Amber Young entered a conditional plea of guilty to one count of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). A law enforcement officer discovered the methamphetamine in question on Young's person while executing a search warrant. Young moved to suppress this evidence, arguing that a search of her person was beyond the scope of the warrant. The district court denied this motion. We exercise jurisdiction pursuant to 28 U.S.C. §

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1291, and reverse and remand.

I.

During an ongoing narcotics investigation, Officer Brett Miller of the Taylorsville, Utah police department learned from a confidential informant (CI) that Young was involved in methamphetamine distribution. The CI said that he had purchased methamphetamine from Young at her apartment, and that he had also seen Young travel to other locations to conduct narcotics transactions. The CI claimed that Young would personally transport the narcotics to these locations, and that when doing so, Young would conceal them on her person.

After receiving this information, Officer Miller arranged two controlled buys of methamphetamine at Young's apartment. During these controlled buys, Officer Miller observed the CI enter Young's apartment without drugs on his person and leave with bags containing methamphetamine. The informant indicated that during these buys, he observed larger quantities of methamphetamine in the apartment.

Officer Miller prepared an affidavit in support of a warrant application and applied for a search warrant. His affidavit related the information he received from the CI concerning prior drug transactions, as well as his own knowledge concerning the two controlled buys. Based on this affidavit, a judge of the Utah state district court issued a search warrant on October 31, 2005. In pertinent part, the warrant stated that there was probable cause to believe that evidence of narcotics distribution would be found:

. . . (X) in the premises known as: 4696 S Sunstone Road apartment 199,

2

which is further described as being located in a multi family apartment building. The apartment is on the third floor and the door faces to the west, the numbers 199 are visible above the door and the numbers 4696 are displayed on the front of the building. To include all rooms, attics, basements, and other parts therein, the surrounding grounds, any garages, storage rooms, storage areas and trash containers of any kind located thereon where articles of evidence may reasonably be concealed.

. . . on the persons known as: Amber Tempest Young, a Caucasian female, approximately 5'10" and 189 pounds, with blonde/strawberry hair and blue eyes, with a birth date of February 20th, 1981 . . . .

Search & Seizure Warrant, Aplt. Br., Appx. E, at 1. The command line of the warrant, however, stated only that "YOU ARE THEREFORE COMMANDED . . . to make a search of the above-named premises." Id. at 2.[1]

The following day, Officer Miller executed the warrant by stopping Young while she was driving on the freeway, several miles from the apartment described in the warrant. Officer Miller proceeded to search Young, and discovered 30 grams of methamphetamine.[2]

On February 1, 2006, a grand jury indicted Young for, among other things, possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Young moved to suppress the drugs discovered during the search of her person. In her motion, Young argued that the thrust of the warrant was to permit a search

---

[1] The entire text of the warrant, along with its attachment, is attached to this Order and Judgment as Appendix A.

[2] While not apparent from the record, the parties stated upon questioning at oral argument that Young's apartment was never searched, and that the methamphetamine that gave rise to the charges against Young was the methamphetamine found on Young's person as a result of the search challenged here.

3

of her apartment, and that the warrant permitted law enforcement officers to search her person only if she was at, or in close proximity to, her apartment. She specifically stated that she was not challenging "the probable cause finding or the facial validity of the warrant." Memo. in Supp. of Mot. to Suppress, Vol. I, Doc. 35, at 4. As a result, Young argued that the "good faith" exception to the exclusionary rule in United States v. Leon, 468 U.S. 897, 920 (1984), did not apply because she was challenging only Officer Miller's execution of the warrant as exceeding the scope of the warrant, and not the warrant's validity.

The district court denied Young's motion. In so doing, the court found that the language of the warrant authorized a search of Young away from her apartment. The court further held that while the ambiguity of the warrant's language "raise[d] questions about the validity of the warrant," Officer Miller executed the warrant in good faith, making it unnecessary to suppress the methamphetamine seized. Order & Memo. Decision, Aplt. Br., Appx. C, at 4-6.

Following the court's ruling on her motion to suppress, Young pleaded guilty to one count of possession of a controlled substance with intent to distribute. As a part of the plea agreement, she reserved the right to appeal the denial of her motion to suppress.

II.

In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, and we accept the district court's factual findings unless they are clearly erroneous. United States v. McKerrell, 491 F.3d 1221, 1224-25

4

(10th Cir. 2007). We review the ultimate determination of reasonableness under the Fourth Amendment *de novo*. Id.

On appeal, Young argues that the district court erred in denying her motion to suppress for two reasons. First, she argues that the court erred in determining that the warrant authorized a search of her person at a place other than the apartment named in the warrant. Second, she argues that the court erred in holding that, even if the warrant was invalid for some reason, the good faith exception to the exclusionary rule applied.

### a. Scope of the Warrant

Search warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Young does not challenge the validity of the warrant, or argue that it does not describe the places to be searched or things to be seized with particularity. Instead, she contends that the search of her person was beyond the scope of the warrant. Specifically, she claims that her person was not "particularly described" in the warrant as one of the places to be searched, and that the warrant only authorized a search of her person if she was at, or in close proximity to, the apartment named in the warrant. The government disputes this interpretation of the warrant and argues the district court's more expansive view of the scope of the warrant is the correct reading. The scope of a search warrant is a question of law that we review *de novo*. United States v. Angelos, 433 F.3d 738, 745 (10th Cir. 2006). The scope of a warrant is determined using "a standard of practical accuracy rather than technical precision." Id. (quoting United States v. Ortega-Jimenez, 232 F.3d 1325, 1328 (10th Cir.

5

2000)). Such a "practical reading" of the warrant is permissible if a warrant's terms are disputed, as they are here. Id. at 746.

The district court concluded that the warrant "purported on its face to authorize a search of Ms. Young separate and apart from her apartment." Order & Memo. Decision, Aplt. Br., Appx. C, at 6. In reaching this conclusion, the court relied on the two paragraphs in the warrant stating that there was probable cause to search the apartment and to search Young. Because no language in these paragraphs "expressly conditioned the permission to search [Young] on [her] presence" at the apartment, the court concluded that no such condition existed, thereby distinguishing the cases on which Young relied. Id. at 4. Neither the parties nor the district court specifically addressed the command line of the warrant.

On appeal, Young contends that "the warrant clearly only command[ed] a search of Ms. Young's residence." Aplt. Br. at 14. She concedes that the warrant stated that there was probable cause to believe that contraband or evidence of a crime would be found on her person. However, she now points to the warrant's command line, which only authorized the searching officer "to make a search of the above-named *premises*." Search & Seizure Warrant, Aplt. Br., Appx. E, at 2 (emphasis added). According to Young, because "[t]he plain meaning of premises does not include someone's person," the warrant cannot reasonably be construed to permit a search of her person apart from her residence. Aplt. Br. at 16.

When the warrant is read in its entirety, we agree that the search of Young's

6

person was beyond the scope of the warrant. In both popular and legal usage, the term "premises" refers to real property, not persons. See Webster's Third New Int'l Dictionary 1789 (1993) (definition of "premise"); Black's Law Dictionary 1180-81 (6th ed. 1990) ("The term ["premises"] as used in a search warrant includes land, buildings, and appurtenances thereto."). In addition, the warrant itself uses the term "premises" to refer specifically to Young's apartment; Young, by comparison, is referred to as a "person" earlier in the warrant. See Search & Seizure Warrant, Aplt. Br., Appx. E, at 1. Particularly when viewed in light of this cross-reference, we believe that the term "premises" in the command line refers to Young's apartment, and not to Young.

We acknowledge the possibility that the use of the term "premises" in the command line was boilerplate, and that the omission of Young from the command line was a mere oversight on the part of the Utah judge. We are hesitant to place too great an emphasis on the command line of the warrant, standing alone, which threatens to value technical precision over practical accuracy. Cf. Angelos, 433 F.3d at 745. We therefore reaffirm that in reviewing a warrant, we should and do take into account *all* parts of the warrant. United States v. Callwood, 66 F.3d 1110, 1113 (10th Cir. 1995). Our reading of the command line as permitting only a search of the apartment, however, is strengthened by reference to the affidavit Officer Miller submitted to the magistrate judge. See United States v. Ortega-Jiminez, 232 F.3d 1325, 1329 (10th Cir. 2000) ("[A]n affidavit . . . may be used to clarify with 'practical accuracy' the meaning of a disputed term in a warrant when the same person is both affiant and executing officer."). As the district court

7

recognized, "the facts submitted to the magistrate in support of Officer Miller's request for a warrant to search Ms. Young are sparse." Order & Memo. Decision, Aplt. Br., Appx. C, at 5. While Officer Miller's CI claimed that he had both purchased methamphetamine from Young and observed Young travel to other locations to conduct narcotics transactions, the only information that Officer Miller's subsequent investigation corroborated was that narcotics transactions took place at Young's apartment. Based on this fact, it is entirely plausible that the magistrate judge who issued the warrant did not find probable cause to search Young apart from her apartment, and that the omission of Young's person from the command line was intentional.

We therefore conclude that the warrant permitted no more than a search of the apartment, and that the search of Young several miles away from her apartment exceeded the scope of the warrant. For purposes of this appeal, we need not address the hypothetical question of whether Young could have been searched at her apartment, had her apartment been searched pursuant to the warrant.

The government argues that we should not address Young's command-line argument (that the search of Young's person exceeded the scope of the command line) because Young did not specifically raise this argument before the district court. Young admittedly focused her argument before the district court on the more ambiguous part of the warrant, the section describing where evidence was likely to be found. That Young did not focus more attention on the command line does give us some pause. However, the ultimate issue before the district court was the same issue now presented on appeal:

8

whether the search of Young's person exceeded the scope of the authority given by the *warrant*.

Before the district court, Young clearly articulated the basis of her objection to the search, which was that the warrant only authorized a search of her apartment and not her person. She argued that if the warrant authorized a search of her person, it only did so if she was at or close to her apartment. The warrant in this case is not particularly complex or confusing. It consists of only two pages and a one-page addendum. We see no way to construe the warrant without considering the command line.[3] It would require a hypertechnical reading of Young's arguments before the district court to conclude that Young has waived any argument based on the command line. The question presented to the district court was whether the search of Young's person exceeded the scope of the warrant—and the proper construction of the command line, as a part of the warrant, was properly presented to the district court.

### b. Good Faith Exception

The district court, having found that the search warrant permitted a search of

---

[3] For this reason, the primary case cited by the government, United States v. Mitchell, 783 F.2d 971 (10th Cir. 1986), is inapposite. In Mitchell, the defendant argued before the trial court that evidence should be suppressed because the officers who executed the warrant did not give adequate warning before breaking and entering the premises. Id. at 973. On appeal, the defendant renewed that argument, and also made the entirely new argument that the search exceeded the scope of the warrant. Id. Young, by contrast, has made essentially the same argument. She is not proceeding on a new theory, but has chosen to refocus on a different part of the warrant because the district court apparently overlooked it.

9

Young apart from her apartment, harbored doubts about the warrant's validity.[4] The court thus proceeded to consider whether the good faith exception to the exclusionary rule applied. Under this exception, exclusion of evidence is not an appropriate remedy "where an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope, even though the search warrant was later deemed to be invalid." United States v. Herrera, 444 F.3d 1238, 1249 (10th Cir. 2006) (quoting Leon, 468 U.S. at 920). However, if a warrant has been improperly executed, the good faith exception will not save the ensuing search. Id.; see also United States v. Medlin, 798 F.2d 407, 410 (10th Cir. 1986) (explaining that the rationale for the exclusionary rule is deterrence of police misconduct, and that "[u]nlike cases in which the police properly execute an invalid warrant that they reasonably thought was valid, in cases of improper execution there is police conduct that must be deterred."). Because the validity of the warrant is not challenged in this case, and because we have concluded that the warrant did not authorize the search of Young's person, we also conclude that Leon's good faith exception does not apply.

### III.

The government contends that we should remand to the district court for further factfinding "on the alternative grounds for affirmance that could be raised by the United

---

[4] Young herself did not argue that the warrant was invalid if it authorized a search of her person; the district court addressed this issue *sua sponte*. Its doubts apparently stemmed from the belief that a warrant issued solely for the search of a person was constitutionally suspect. See Tr. of Mot. Hr'g, Vol. III, Doc. 61, at 2 ("[I] can't find anything that allows separate search warrants of people.").

States." Gov't Br. at 7. The government argues that on remand, the district court could determine (1) whether the warrant incorporated the warrant affidavit; and (2) whether the search was justifiable as either a search incident to arrest, or as a *Terry* stop and frisk. The government relies on cases providing that "[w]hen the record from the district court is inadequate, leaving the court of appeals unable to resolve an issue, remand is an appropriate alternative remedy." Id. at 7-8 (citing United States v. Olivares-Rangel, 458 F.3d 1104, 1113 (10th Cir. 2006); United States v. Ramstad, 219 F.3d 1263, 1265 (10th Cir. 2000)). However, a closer examination of those cases reveals that in both, the issue for which there was an insufficient record was actually raised in the original proceeding. This authority does not support the proposition that we may remand in order to permit the government to make entirely new arguments in support of the district court's ruling. We therefore respectfully decline the government's invitation to remand this case to the district court for further factfinding.

IV.

We REVERSE the district court's denial of Young's motion to suppress and REMAND for further proceedings.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

# APPENDIX A

39.135

IN THE THIRD DISTRICT COURT, WEST JORDAN DIVISION

IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

SEARCH AND SEIZURE WARRANT

No.

COUNTY OF SALT LAKE, STATE OF UTAH

To any peace officer in the State of Utah:

Proof by Affidavit under oath having been made this day before me by Detective Brett Miller, I am satisfied that there is probable cause to believe

That (X) in the premises known as: 4696 S Sunstone Road apartment 199, which is further described as being located in a multi family apartment building. The apartment is on the third floor and the door faces to the west, the numbers 199 are visible above the door and the numbers 4696 are displayed on the front of the building. To include all rooms, attics, basements, and other parts therein, the surrounding grounds, any garages, storage rooms, storage areas and trash containers of any kind located thereon where articles of evidence may reasonably be concealed.

That on the persons known as: Amber Tempest Young, a Caucasian female, approximately 5'10 and 189 pounds, with blonde/strawberry hair and blue eyes, with a birth date of February 20th, 1981. and Gerald Glenn Bell, a Caucasian male, approximately 5'11 and 197 pounds, with brown hair and blue eyes with a birth date of October 3rd, 1969. (Information obtained through the drivers license description and the Taylorsville Police Department Database)

In the City of Taylorsville, County of Salt Lake, State of Utah, there is now certain property or evidence described as: See attachment "A"

and that said property or evidence

    (X) was unlawfully acquired or is unlawfully possessed, or
    (X) has been used to commit or conceal a public offense, or
    (X) is being possessed with the purpose to use it as a means of committing or concealing a public offense, or
    (X) consists of an item or constitutes evidence of illegal conduct, possessed by a party to the illegal conduct, or
    ( ) consists of an item or constitutes evidence of illegal conduct, possessed by a person or entity not a party to the illegal conduct. [Note requirements of Utah Code Annotated, 77-23-3(2)]

12

YOU ARE THEREFORE COMMANDED:

( )     in the daytime.

(X)     at any time day or night because there is reason to believe it is necessary to seize the property prior to it being concealed, damaged, destroyed, or altered, or for other good reasons to-wit: Your affiant knows from speaking with the informant that Amber Young typically uses the hours of darkness to conduct her narcotics transactions. Your affiant has noted the above premises is in a residential area, your affiant knows form training and experience working the area that there typically is a lot of vehicular and pedestrian traffic passing through the complex during the daytime hours, during the night time hours there typically is little to no traffic. Your affiant knows that the amount of narcotics purchased form the residence from the C.I. was packaged in such a way it could easily be secreted or destroyed if the subject were to see law enforcement on approach to the residence. Your affiant knows from training and experience the cover of darkness enhances an undetected approach to the residence without endangering the safety of police officers, individuals inside the residence, or bystanders. The C.I. reported that He/She observed a firearm in Bell's possession within the past week. Bell has a documented history of weapons possession and a prior conviction for Attempted Homicide. Your affiant anticipates the use of a tactical team during the service of the search warrant and requests a knock and announce not be required.

to make a search of the above-named premises for the herein-above described property or evidence and if you find the same or any part thereof, to bring it forthwith before me at the Third District Court, County of Salt Lake, State of Utah, or retain such property in your custody, subject to the order of this court.

GIVEN UNDER MY HAND and dated this 31st, day of October, 2005.

JUDGE OF THE THIRD DISTRICT COURT

13

AFFIDAVIT FOR SEARCH WARRANT/
SEARCH WARRANT

ATTACHMENT "A"

ITEMS TO BE SEIZED

1. METHAMPHETAMINE; A WHITE OR OFF-WHITE CRYSTAL SUBSTANCE IN POWDER, LIQUID, OR SOLID FORM, A SCHEDULE II CONTROLLED SUBSTANCE.

2. PACKAGING MATERIAL; TO INCLUDE BUT NOT LIMITED TO PLASTIC BAGS, TAPE, PAPER BINDLES CUT INTO SQUARES, SCALES, AND MATERIAL USED TO DILUTE THE POTENCY OF THE METHAMPHETAMINE.

3. DRUG PARAPHERNALIA; TO INCLUDE BUT NOT LIMITED TO SYRINGES, SPOONS, COTTON BALLS, MIRRORS, RAZOR BLADES, SHORT STRAWS, METAL OR GLASS PIPES, TUBES, AND OTHER ITEMS USED TO MAKE OR INJEST METHAMPHETAMINE.

4. RESIDENCY PAPERS; TO INCLUDE BUT NOT BEING LIMITED TO UTILITY RECEIPTS AND OR BILLS, RENTAL/LEASE AGREEMENTS, AND ARTICLES SHOWING OCCUPANCY OF THE PREMISES.

5. U.S. CURRENCY BELIEVED TO BE IN CLOSE PROXIMITY TO THE NARCOTICS BEING SEARCHED FOR, AND ANY AND ALL ITEMS DETERMINED TO BE COLLATERAL OR PROCEEDS FROM NARCOTICS TRANSACTIONS.

6. NARCOTIC RECORDATIONS; TO INCLUDE BUT NOT BEING LIMITED TO PRICE LIST, AMOUNTS SOLD, TIMES, DATES, AMOUNTS PURCHASED, FINANCIAL GAIN, AND ESPECIALLY DRUG INDEBTEDNESS.

7. FIREARMS; TO INCLUDE ALL PISTOLS, REVOLVERS, SHOTGUNS, AND RIFLES. THIS INCLUDES AMMUNITION, MAGAZINES, SPEED LOADERS, AND OTHER ITEMS THAT ARE DETERMINED TO BE FIREARMS RELATED ACCESSORIES.

8. ITEMS DETERMINED TO BE FRUITS AND INSTRUMENTALITIES OF THE CRIMES OF POSSESSION AND DISTRIBUTION OF A CONTROLLED SUBSTANCE.