**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Edward Leroy PRICE, Defendant–
Appellant.**

No. 94–3266.

United States Court of Appeals,
Tenth Circuit.

Feb. 2, 1996.

Howard A. Pincus, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on the brief), Denver, Colorado, for Defendant–Appellant.

James E. Flory (Randall K. Rathbun, United States Attorney, and Gregory G. Hough, Assistant United States Attorney, with him on the brief), Topeka, Kansas, for Plaintiff–Appellee.

Before ANDERSON, BALDOCK, and LUCERO, Circuit Judges.

ANDERSON, Circuit Judge.

Edward Leroy Price was convicted in the district court of conspiracy to possess methamphetamine with intent to distribute and possession of marijuana with intent to distribute. He appeals, arguing the district court erred 1) in denying his motion to suppress evidence allegedly obtained by a Kansas law enforcement officer acting outside the officer's jurisdiction, 2) in denying his motion to discover the underlying bases for the laboratory conclusion that the substances seized were methamphetamine, and to discover the credentials of the chemist who performed the tests, and 3) in sentencing him to twenty years in prison for the marijuana conviction, thereby exceeding the maximum

penalty established in 21 U.S.C. § 841(b)(1)(D). We affirm the district court's pretrial rulings and remand for resentencing on the marijuana conviction.

## BACKGROUND

On August 23, 1993, law enforcement officers from the Shawnee County, Kansas, Sheriff's Department and the Kansas Bureau of Investigation ("KBI") commenced an undercover operation targeting Edward Leroy Price, a suspected methamphetamine dealer. The officers arranged for Mary Clayton, a dealer for Price who had previously been arrested, to participate in a controlled purchase from Price at her residence. KBI agents and Shawnee County officers maintained surveillance on Clayton's residence through the night of August 23, 1993. The next morning, August 24, they participated in a joint briefing regarding the surveillance and investigation. That same morning, Clayton telephoned Price and informed him, through code, that she wished to purchase some methamphetamine.

KBI agents and Shawnee County officers then set up surveillance on Price's residence. During the day, KBI agents followed Price from his home in rural Osage County, Kansas, trailing him by car and plane. Later that day, based on the information provided by Clayton, Shawnee County Sheriff's Detective Dan Jaramillo prepared an affidavit and sought a search warrant for Price's residence in Osage County. A state judge in Shawnee County issued the warrant.

On the evening of August 24, Price visited Clayton's residence and delivered methamphetamine and marijuana. KBI agents and Shawnee County officers maintained surveillance inside and outside Clayton's home and in the general vicinity. Immediately following the transaction, KBI agents arrested Price in the alley outside Clayton's home. KBI Special Agent Larry Dixon then informed the Osage County Sheriff that officers involved in the investigation would be executing a search warrant in Osage County.

At approximately 11 p.m. that evening, before officers had arrived at the Price residence with the search warrant, KBI agents and officers from Osage and Shawnee Counties observed Mrs. Price leaving her residence. Fearing the operation had been compromised, they stopped Mrs. Price, informed her other officers were en route with a search warrant, obtained her consent to enter the house, and then entered and secured the premises. Within ten minutes, Shawnee County officers, including Officer Jaramillo, arrived at Price's residence with the search warrant. KBI agents and Shawnee County officers then jointly executed the warrant, seizing numerous drug related items as well as quantities of substances which later tested positive for methamphetamine and marijuana.

Price moved to suppress the evidence, arguing in part that the search violated state law. He contended that Officer Jaramillo, a Shawnee County law enforcement officer, had exceeded his jurisdiction by executing the search warrant in Osage County.[1] He filed numerous other motions as well, including a discovery motion seeking, among other things, information regarding the KBI laboratory's equipment and chemical testing procedures, and seeking witness information. The district court denied all motions on the merits. Price then waived jury trial and submitted to a bench trial on a stipulated record, reserving the right to appeal the outcome of his pretrial motions.

Following trial, the district court found Price guilty on one count of conspiracy to possess methamphetamine with intent to distribute and one count of possession of marijuana with intent to distribute. The court sentenced Price to concurrent sentences of life imprisonment for the conspiracy conviction and twenty years' imprisonment for the marijuana conviction.

## DISCUSSION

1. *Motion to Suppress Evidence*

█ Price first contends that evidence seized during the search of his home in Os-

---

1. Price also contended the Shawnee County judge lacked probable cause to issue the search warrant because the information provided in the supporting affidavit was insufficient to allow the judge reasonably to believe any drugs would be present at Price's residence. Price does not pursue that argument on appeal.

age County, Kansas, should have been suppressed by the district court because the warrant authorizing the search was executed by officers from Shawnee County, in violation of Kan.Stat.Ann. § 22–2401a(1). *See State v. Hennessee*, 232 Kan. 807, 658 P.2d 1034 (1983). Despite Price's attempts to distinguish the case, our decision in *United States v. Occhipinti*, 998 F.2d 791 (10th Cir.1993), resolves this issue in favor of the district court's denial of the motion to suppress. In *Occhipinti* we held that a search in which KBI officers actively participated along with an undersheriff acting outside the county of his jurisdiction did not violate Kansas law, *id.* at 798–99, because KBI agents have statewide jurisdiction in Kansas. Kan.Stat.Ann. § 75–712.

The record in this case overwhelmingly establishes the active participation of KBI officers in the execution of the search warrant on Price's residence. At the suppression hearing, Officer Jaramillo testified that when he sought the search warrant for Price's residence he was working in conjunction with the KBI. R.Vol. I, Tab 61, at 4–5. He also testified that the investigation of Price started out as a joint operation between the Shawnee County Sheriff's Department and the KBI. *Id.* at 6.

Evidence introduced by stipulation for trial to the bench supports Officer Jaramillo's testimony. *See United States v. Corral*, 970 F.2d 719, 723 (10th Cir.1992) ("In evaluating the correctness of the district court's rulings, the appellate court may consider the entire record developed from the trial even though such evidence may not have been presented during the suppression hearing.").[2] The KBI had a plane in the air and officers and vehicles on the ground following Price and keeping his residence under surveillance on the day of and in connection with his arrest and the related search of his person, vehicle, and residence. KBI agents arrested Price. And,

pursuant to consent by Mrs. Price, KBI agents entered and secured Price's residence prior to the arrival of Officer Jaramillo with the search warrant. They then actively participated in the search.

It is undisputed that Shawnee County officers also played an active role in the execution of the warrant. Nevertheless, Kansas law does not subdivide the authority of active participants executing a warrant. Where KBI agents conducted the search pursuant to statutory authority and a valid warrant,[3] we will not parse the jurisdiction of the various officers involved nor base the suppression of evidence on any such analysis. *See Occhipinti*, 998 F.2d at 799. Joint law enforcement agency operations are common, if not the rule, in this mobile and diffuse area of criminal conduct. We conclude, therefore, as we did in *Occhipinti*, that the search warrant in question was executed by law enforcement agents properly working in the county where the search took place.

This is the short answer to Price's suppression arguments, which are based solely on state law. But we do not mean to imply that it is the only answer or only analysis available. Nor do we agree with Price's proposition that if the government responds to a suppression motion based on state law by arguing only the state law issue, then state suppression law, rather than the Fourth Amendment, controls. The authority in a federal case for suppressing evidence due to an unlawful search is the Fourth Amendment to the Federal Constitution. *United States v. Mitchell*, 783 F.2d 971, 973, 974 (10th Cir.), *cert. denied*, 479 U.S. 860, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986); *see* 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* 112–13 & nn. 77–79 (2d ed. 1987 & Supp.1995) (collecting cases).[4] A violation of state law may or may not form the basis for suppression on

---

**2.** Price stipulated to the admission at trial of the investigative reports prepared by law enforcement officers involved in the investigation of his case. R.Vol. I, Tab 62, at 10–12; *see* Appellant's Br. at 2 n. 1; R.Supp. Vols. III–VI.

**3.** The search warrant was issued to "any law enforcement officer of the State of Kansas." Search Warrant, R.Supp. Vol. III.

**4.** On appeal, we review de novo the ultimate determination of Fourth Amendment reasonableness. *United States v. McCurdy*, 40 F.3d 1111, 1115 (10th Cir.1994).

Fourth Amendment grounds. None of our cases stand for a contrary proposition, nor could they. Nor could the government, by its argument, require a federal court to ignore the Fourth Amendment. *See United States Nat'l Bank v. Independent Ins. Agents of America, Inc.,* 508 U.S. 439, ——, 113 S.Ct. 2173, 2178, 124 L.Ed.2d 402 (1993) (court retains independent power to identify and apply proper construction of governing law). The rule is implicit in those cases cited by Price in which we proceeded directly to an analysis of the defendant's claim that a search or seizure violated state law. *Occhipinti,* 998 F.2d at 798–99; *Mason v. United States,* 719 F.2d 1485, 1488–89 (10th Cir. 1983).[5]

■ Furthermore, this court may uphold the denial of a motion to suppress on any ground supported by the record. *United States v. Sandoval,* 29 F.3d 537, 542 n. 6 (10th Cir.1994). Our power of review of a district court's order is not defined by the arguments made or omitted by the government with respect to evidence admitted in the district court.

### 2. *Rule 16 Discovery*

■ Price next alleges that the district court abused its discretion when it denied his Fed.R.Crim.P. 16 motion to discover: (a) the underlying bases of the government chemist's conclusion that the substances he tested were methamphetamine; (b) information relating to the reliability of the chemist's equipment; and (c) "evidence of the chemist's credentials." Appellant's Corrected Opening

Br. at 36. As a remedy, Price seeks to have his conviction vacated, discovery ordered, and a new trial if that course is suggested by the results of the discovery.

Counsel for Price filed a seven page pretrial "Motion for Discovery, Inspection and Disclosure" pursuant to Rule 16. The motion contained bare references to subparagraphs (A), (B), and (C)[6] of Rule 16(a)(1), without elaboration; a reference to subparagraph (D) followed by two single spaced pages of specific information sought pursuant to that subparagraph of the Rule; and a reference to subparagraph (E) followed by a specific request for names of government witnesses and a narrative of their anticipated testimony.

On January 17, 1995, counsel for both sides appeared before the district court and presented argument on a number of motions filed by Price, including his discovery motion. The transcript of that hearing is 46 pages long, R.Vol. I, at Tab 61, only a fraction of which is devoted to an argument on discovery. The bulk of that argument, in turn, relates directly to Price's detailed requests under Rule 16(a)(1)(D). Price's counsel also referred in general terms to recent amendments to Rule 16, *id.* at 24, without specifying particular subparagraphs, or seeking to amend his written discovery motion.

The government countered that it had already made its entire file available to Price's counsel, stating:

> [T]he defendant has got full disclosure in this matter, Your Honor. We have opened

---

5. Our discussion of *Mason* in *United States v. Mitchell,* 783 F.2d at 973 n. 2, is consistent with this principle. The court may choose to approach the constitutional analysis via the arguments of the parties, as we have with the jurisdictional question raised in the instant case, if the litigants frame the issue in terms of state law. However, nothing in either *Mason* or *Mitchell* requires us to limit our inquiry to whether state law was violated—or even to address the state law issue at all—if the parties present solely that question. *See Mitchell,* 783 F.2d at 973–74 (declining to discuss state law argument and proceeding directly to Fourth Amendment reasonableness analysis).

6. **Rule 16. Discovery and Inspection**
 (a) **Governmental Disclosure of Evidence.**

(1) **Information Subject to Disclosure.**
(A) **Statement of Defendant.**

\* \* \* \* \* \*

(B) **Defendant's Prior Record.**

\* \* \* \* \* \*

(C) **Documents and Tangible Objects.** Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

up the files and given him the three-volume set. He has everything that we have in our possession except for prosecution summaries....

*Id.* at 29. The court then ruled as follows:

Motion of defendant for discovery and inspection, there are lots of motions of this type involved in this, but we believe that they are not specific enough in many cases and consequently that the defendant has not sustained their burden which would grant this type of discovery motion, and so consequently those motions will be denied. The government is admonished, however, to make available to this defendant all evidence that you have in this file and make it available to him. And the government knows what it has to deliver in these cases, you do it all the time, so don't make any exception here. This defendant is charged with a serious crime and he has a right to all of the information in that file, and I ask—and I direct the government to give him that.

*Id.* at 44–45.

On appeal, Price does not contend that the government's representation with respect to its required disclosure was incorrect, or that any violation of the principle set out in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) occurred. Nor does he challenge the rule that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977). Rather, his arguments are confined to the terms of Rule 16 itself. Accordingly, we confine our analysis to the rule in light of Price's motion, the government's production, and the district court's ruling.

As indicated above, Price relied almost exclusively on subparagraph (a)(1)(D) of Rule 16, which provides as follows:

Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

The language is clear on its face. It requires the prosecution to turn over "results or reports" of scientific tests. *See United States v. Dennison,* 937 F.2d 559, 565–66 (10th Cir.1991), *cert. denied,* 502 U.S. 1037, 112 S.Ct. 886, 116 L.Ed.2d 789 (1992) (defining identical terms in Rule 16(b)(1)(B) and (b)(2)); *United States v. Iglesias,* 881 F.2d 1519, 1523–24 (9th Cir.1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1154, 107 L.Ed.2d 1057 (1990) (distinguishing "results or reports" from preliminary notes); *see also* Fed. R.Crim.P. 16(a)(2) (internal government documents not discoverable). The record shows the prosecution turned over its entire investigative files, including all reports and test results issued by the KBI laboratories. *See* R.Vol. I, Tab 61, at 29–30. The government therefore complied with 16(a)(1)(D), and the court did not abuse its discretion in refusing to permit additional discovery relating to laboratory processes under that part of Rule 16.

■ The references in Price's motions to subparagraphs (A), (B), and (C) of Rule 16(a)(1) were entirely without detail, and the argument before the district court provided no further basis for a ruling. Despite attempts to expand the argument on appeal, *see Walker v. Mather (In re Walker),* 959 F.2d 894, 896 (10th Cir.1992) (as a general rule, court will not consider an argument for the first time on appeal), upon a review of the record, we conclude that the district court did not abuse its discretion in denying such general requests. *Cf. United States v. Carrasquillo–Plaza,* 873 F.2d 10, 12 (1st Cir. 1989) (defendant's "blanket demand" under 16(a)(1)(C) "was too general to satisfy the requirement of a request and of a showing of materiality").

■ Similarly, the denial of Price's general request for the names of witnesses and a narration of their testimony, R.Vol. I, Tab 15, at 3; Appellant's Corrected Opening Br. at 41–42, does not indicate any abuse of discretion. Price was certainly entitled to witness,

including expert witness, information under amended Rule 16(a)(1)(E). But there was no trial setting, and it is not at all apparent that any such witness list or testimony summaries existed. If they did it is implausible that Price suffered prejudice by not having them. He was free to develop his own expert testimony. And, the government could have established the nature of the substances through the testimony of Mary Clayton who dealt Price's drugs. *See, e.g., United States v. Sanchez DeFundora,* 893 F.2d 1173, 1175–76 (10th Cir.), *cert. denied,* 495 U.S. 939, 110 S.Ct. 2190, 109 L.Ed.2d 518 (1990).

### 3. *Erroneous Sentence*

 Finally, Price argues that his twenty year marijuana sentence exceeds the statutory maximum. The legality of a sentence presents a question of law, which we review de novo. *United States v. Gonzalez-Lerma,* 14 F.3d 1479, 1484 (10th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 1862, 128 L.Ed.2d 484 (1994).

Under 21 U.S.C. § 841(b)(1)(C), a court may sentence a person convicted of possessing marijuana with intent to distribute to a maximum of twenty years in prison. Subsection (C) excepts from its applicability cases of less than 50 kilograms of marijuana. *See id.* § 841(b)(1)(C), (D). The maximum penalty in such cases is ten years. *Id.* § 841(b)(1)(D).[7] It is undisputed that Price was charged with and convicted of possessing less than 50 kilograms of marijuana with intent to distribute.[8]

 The government concedes the district court erred in imposing the sentence, but argues the error is harmless because Price's conspiracy conviction resulted in a concurrent life sentence. *See United States v. Riebold,* 557 F.2d 697, 705 (10th Cir.), *cert. denied,* 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977) (error on one count harmless if unrelated to separate conviction with concurrent sentence); Appellee's Br. at 39. Because the sentences imposed are to run concurrently, we may address the alleged error, *Barnes v. United States,* 412 U.S. 837, 848 & n. 16, 93 S.Ct. 2357, 2364 & n. 16, 37 L.Ed.2d 380 (1973); *Benton v. Maryland,* 395 U.S. 784, 790–91, 89 S.Ct. 2056, 2060–61, 23 L.Ed.2d 707 (1969) (citing concern for adverse collateral consequences); *United States v. Montoya,* 676 F.2d 428, 431–33 (10th Cir.), *cert. denied,* 459 U.S. 856, 103 S.Ct. 124, 74 L.Ed.2d 108 (1982), or decline to do so, *see United States v. Hines,* 564 F.2d 925, 928 (10th Cir.1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 748, 54 L.Ed.2d 770 (1978); *United States v. Gamble,* 541 F.2d 873, 877 (10th Cir.1976); *United States v. Bath,* 504 F.2d 456, 457 (10th Cir.1974). We exercise our discretion here to reach the issue and find that the twenty year sentence imposed by the district court exceeds the maximum sentence allowed by statute.[9] We therefore remand to the district court with instructions to vacate the marijuana sentence and conduct further sentencing proceedings consistent with this opinion. *See United States v. Smith,* 919 F.2d 123, 124, 126 (10th Cir.1990) (vacating fine imposed as part of sentence and remanding for further sentencing proceedings).

### CONCLUSION

The district court's pretrial suppression and discovery rulings are AFFIRMED and the case is REMANDED with instructions to

---

7. Subsection (D) prescribes a maximum term of imprisonment of five years, unless the person has a prior final conviction for a felony drug offense—as did Price—in which case the maximum term of imprisonment is 10 years.

8. *See* R.Vol. I, Tab 1, at 3 (charging Price with possessing with intent to distribute 2250 grams of marijuana); *id.* Tab 51, at 1 (convicting Price of possession with intent to distribute 2250 grams of marijuana); *see also* R.Supp.Vol. III, Investigative Report of Det. S.J. Holladay re Search Warrant, dated Aug. 24, 1993, at 2 (KBI Agent Myer discovered two bricks of marijuana

in Price residence amounting to 897.56 grams); *id.,* Investigative Report of Off. David Ritchie re Surveillance and Arrest, dated Aug. 23, 1993, at 2 (Price delivered approximately 3 pounds of marijuana to Clayton in controlled purchase).

9. The sentence imposed for the marijuana conviction also included six years' supervised release, in excess of the maximum five year period allowed by the applicable Sentencing Guideline range. *See* Appellant's Corrected Opening Br. at 48. The government concedes this error as well. *See* Appellee's Br. at 39.

vacate the sentence for the marijuana conviction and conduct further sentencing proceedings.