**Filed 4/19/96**

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

BARRY SMYTH,

    Plaintiff - Appellant,

    v.

LAKEWOOD, CITY OF, Colorado; JOHN
F. KUEBLER; JACK L. WEGERT; JAMES
COLEMAN, Sgt., Lakewood Police Agent;
JOHN W. MOORE, doing business as
Liberty Towing; SHIRLEY MOORE, doing
business as Liberty Towing; and ROBERT
WALDRIP, tow truck operator,

    Defendants - Appellees,

    and

LIBERTY TOWING, tow truck operators:
Bob #2 and Robert #4 and owners John W.
and Shirley Moore,

    Defendants.

No. 95-1481

D. Colorado

(D.C. No. 94-B-2319)

---

## ORDER AND JUDGMENT[*]

---

Before **ANDERSON**, **BARRETT**, and **LOGAN**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Barry Smyth appeals from an adverse summary judgment dismissing his 42 U.S.C. § 1983 civil rights action against the City of Lakewood, Colorado, three of its police officers, a towing company and four of its officers and employees.[1] In his first amended complaint, Mr. Smyth alleges that on the evening of Thursday, September 29, 1994, at around 8:25 p.m. he was pulled over by City of Lakewood officer John Kuebler for speeding, placed under arrest, taken to the City of Lakewood booking room and subsequently to the Jefferson County detention center from which he was released at about 2:30 a.m. on September 30, after posting bond.

He further alleges that his locked vehicle was opened, towed to an impound yard, the contents inadequately inventoried as a pretext for a general search, and that the computer which he kept in the car must have been "searched," since the 20-minute

---

[1]Mr. Smyth has recently filed other unsuccessful civil rights actions, two of which he appealed to this court: Smyth v. Sandridge, No. 94-1536 (10th Cir., filed 5/2/95), and Smyth v. City of Lakewood, No. 95-1026 (10th Cir., filed 1/10/96). We dismissed No. 94-1536 for lack of jurisdiction, and in No. 95-1026 we affirmed the district court's dismissal of Mr. Smyth's complaint.

useable portion of the computer battery was drained when the computer was returned from the police department's property section.

The detailed factual allegations surrounding these events are set forth in the first 92 paragraphs of Mr. Smyth's complaint and are, in general, effectively summarized in the magistrate judge's recommendation filed September 19, 1995. R. Vol. I at Tabs 16, 56. We generally incorporate by reference the magistrate judge's recital of the facts, except to the extent necessary to our analysis of the appeal.

Mr. Smyth's first amended complaint alleges eight causes of action which may be summarized as follows: First, he contends that he was arrested in violation of his rights under the Fourth Amendment. Second, he contends that his vehicle was seized and towed in violation of his rights under the Fourth Amendment. Third, he contends that his vehicle was searched in violation of his rights under the Fourth Amendment. Fourth, he contends that the inventory search of his vehicle constituted gross negligence and a willful, wanton and reckless disregard for his God-given constitutionally protected rights. Fifth, he contends that the towing company's employees conspired with the City of Lakewood officers to break into, seize and unlawfully search his car in violation of his Fourth Amendment rights. Sixth, his rights under the Fourth and Eighth Amendments were violated in three ways after he was taken to the City of Lakewood booking room: (a) delay in allowing him to make a telephone call; (b) setting bond at $400 for two allegedly nonarrestable offenses; and (c) delay in allowing him an opportunity to "bond

out" of the Lakewood booking room. Seventh, he contends that the City of Lakewood violated his constitutional rights by failing to train the City's police officers with respect to the City's policy on bonding out of the booking room, setting bond, access to the telephone, impound of arrestees' automobiles, procedures when towing and impounding arrestees' vehicles, and what constitutes a valid inventory search, resulting in causes of action two through six. And, eighth, he contends that the City of Lakewood has a

> custom and policy of allowing their agents or officers to make general inventory lists outside the presence of the tow truck driver in violation of their own policy, having the effect of allowing them to rummage through the arrestee's property looking for evidence of criminal activity without a warrant and subjecting the arrestee to the potential theft of his property, inaccurate or incomplete inventory lists and potentially the planting of false evidence and having the proximate cause of [his] third cause of action.

Am. Compl. at ¶ 101, id. at Tab 16.

The magistrate judge, while analyzing the case from the standpoint of qualified immunity, found that no genuine issue of material fact existed which would preclude a finding that the defendants' actions did not violate any of Mr. Smyth's constitutional rights. Following a *de novo* review, the district court concluded that the magistrate judge's recommendation was correct, granted the defendants' motion for summary judgment, denied Mr. Smyth's cross-motion for summary judgment and denied the defendants' request for attorneys' fees. The court also notified Mr. Smyth that any further actions filed in the district court which are deemed to be frivolous or vexatious or wholly without merit will cause Smyth to be subject to sanctions. The district court then

dismissed the action. Mr. Smyth appeals, alleging that the district court erred by (1) refusing to allow Smyth to amend his complaint; (2) refusing to compel compulsory discovery and impose sanctions on the defendants; (3) refusing to order separate counsel for each of the defendants on the basis of conflict of interest or contractual requirement; (4) refusing to grant a continuance to permit discovery against the City of Lakewood; (5) refusing "to allow a measly 20-day continuance to allow the plaintiff time to obtain and submit expert witness reports," (6) deciding material issues of fact which are in dispute; (7) refusing to grant discovery sanctions; (8) refusing to grant Rule 11 sanctions; (9) granting qualified immunity to employees of the towing company; (10) failing to consider the improper motives of the defendants; (11) failing to recite clearly established law with respect to Smyth's bail claim; and (12) granting summary judgment in favor of the defendants based on qualified immunity. In addition, Mr. Smyth requests that this court enter an order assigning the case on remand to a new judge and new magistrate judge, if this court determines that the actions below constitute a biased tribunal. For the reasons stated below, we affirm.

## DISCUSSION

Our standard of review of the grant of summary judgment is *de novo,* <u>Pallotino v. City of Rio Rancho</u>, 31 F.3d 1023, 1026 (10th Cir. 1994), and necessarily focuses first on whether or not a genuine issue of material fact exists with respect to whether any action

complained of by Mr. Smyth arises to the level of a violation of the Federal Constitution. Seigert v. Gilley, 500 U.S. 226, 232 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.").

### A.  The Arrest

There is no dispute over the fact that Officer Kuebler placed Smyth under arrest. Of course, if the arrest was lawful Mr. Smyth's Fourth Amendment rights could not have been violated.  The contention here is that the arrest was not lawful.

The record reflects three explanations for Smyth's arrest:  speeding (75 mph in a 55 mph zone), expired plates, and an outstanding warrant for Smyth's arrest.  But, these explanations are inconsistently reflected in the record.  In his report, Kuebler wrote that:

> when [Smyth] demanded to know if he was under arrest, I told him that he was; for speeding and expired plates and that the decision as to whether he was to be released on a summons or required to post bond was mine.
>
> Agt. Wegert and Sgt. Coleman arrived and Wegert began an impound for safekeeping after a computer check revealed an outstanding Lakewood warrant for FTA, traffic.

R. Vol. I at Tab 30, Pls.' Ex. F (emphasis added).

Officer Wegert's reports recite the offenses as:  "FTA [failure to appear] warrant/speeding/expired plates."  Id., Exs. B and M.

Mr. Smyth's combination memorandum brief and affidavit states his version of the events to the effect that he was placed under arrest for speeding, then was placed (at his own request) in the officer's car, at which point Officer Kuebler "announced that he had an outstanding warrant for [Smyth's] arrest and that he intended to tow [Smyth's] car and was waiting for someone to come do that." Id. at Tab 30, p. 6.

Mr. Smyth goes on to state that when he was placed in Officer Kuebler's cruiser, he noticed that his name and "person of special interest" showed on the computer screen. Id. Thus, from Mr. Smyth's own version of events, it is clear that Officer Kuebler knew of the outstanding warrant on Smyth when he placed Smyth under arrest.

Citing various authorities, Mr. Smyth first argues that Colorado law does not permit an arrest for going 20 miles over the speed limit or for having expired plates. He complains that neither the defendants, the magistrate judge, nor the district court addressed this point, and he's right. Except for a passing reference to speeding being an arrestable offense, the magistrate judge focused on the outstanding warrant as justification for Smyth's arrest. The defendants in their briefs below and on appeal rely entirely on the warrant, strongly suggesting that they have no answer to Smyth's arguments on speeding and expired plates. In any event, we decline to do the defendants' research for them, and review the arrest issue on the basis of the outstanding warrant only.

Mr. Smyth does not deny that there was a bench warrant for his arrest outstanding at the time Officer Kuebler placed him under arrest. A copy of the warrant is in the record as an exhibit accompanying the defendants' motion for summary judgment. Id. at Tab 23, Ex. B. In standard form language it commands "any authorized law enforcement officer . . . to forthwith arrest [Smyth]." Id. This unquestionably justified Smyth's arrest by Kuebler. See Hill v. Bogans, 735 F.2d 391, 393 (10th Cir. 1984) (holding that police officers "acted reasonably in relying on routine police procedures [i.e., calling the police station] for establishing the existence of an outstanding warrant"); Capone v. Marinelli, 868 F.2d 102 (3d Cir. 1989) (holding that officers were entitled to rely on NCIC bulletin stating that there was an arrest warrant outstanding on plaintiff); cf. United States v. Hensley, 469 U.S. 221, 232-33 (1985) ("It is the objective reading of the flyer or bulletin that determines whether other police officers can defensibly act in reliance on it."); Whiteley v. Warden, 401 U.S. 560, 568 (1971) ("We do not, of course, question that the . . . police were entitled to act on the strength of the radio bulletin.").

Mr. Smyth's contention is that Kuebler could not use the warrant because it was allegedly illegal on its face, since it referred to a nonarrestable traffic infraction, it was unsupported by a proper affidavit, and because Officer Kuebler refused to obtain the warrant and make his own determination of its validity before making an arrest. R. Vol. I at Tab 30, pp. 23-25.

On the facts of this case nothing in the various authorities cited by Smyth supports his conclusion. An officer on the highway is entitled to rely on an accurate computer notification that there is an existing warrant for an individual's arrest. The officer is not required by the Fourth Amendment to obtain a copy of the warrant, research supporting documentation, or go behind the facial validity of a warrant before making the arrest.

## B. Towing and Inventory

After arresting Smyth the police were entitled to have his car, full of belongings, towed away either for safekeeping, or because it was a hazard, or both. It is clear from the record in this case, including a photograph supplied by Smyth, that the officer's decision to impound the car was reasonable and proper. United States v. Kornegay, 885 F.2d 713, 716 (10th Cir. 1989), cert. denied, 495 U.S. 935 (1990); see United States v. Agofsky, 20 F.3d 866 (8th Cir.) (Fourth Amendment does not require police to allow arrested person to arrange for another person to pick up arrested person's car to avoid impoundment and inventory), cert. denied, 115 S. Ct. 280 (1994); United States v. Harvey, 16 F.3d 109 (6th Cir.) (police lawfully exercised their discretion to impound stopped car in absence of any licensed driver to attend to it), cert. denied, 115 S. Ct. 258 (1994); Sammons v. Taylor, 967 F.2d 1533 (11th Cir. 1992) (officer may impound vehicle even where vehicle is not impeding traffic or otherwise presenting a hazard so long as decision to impound is made on basis of standard criteria). There is no merit to Smyth's claims that because he parked

his car on the 22' 4" wide shoulder of the road, saw no potential robbers in the area, and told the arresting officers a friend would pick up the car, a jury must decide whether his Fourth Amendment right not to have his vehicle seized was violated.

Likewise, after Smyth locked his car and refused to cooperate with the police in their removal of the vehicle and inventory of its contents, the officers did not violate his Fourth Amendment rights by using a "slim jim" to open the car door.

The officers were entitled to inventory the contents of the vehicle. Colorado v. Bertine, 479 U.S. 367, 371 (1987). And, contrary to Smyth's argument that an inventory must include every item in the car, down to and including one Reese's Peanut Butter cup, officers are entitled to some latitude by way of general description, and to exercise judgment based on concerns which underlie the reasons for an inventory: to protect property, insure against claims of lost, stolen or vandalized property, and to guard the police from danger. See Florida v. Wells, 495 U.S. 1, 3-4 (1990) ("[T]here is no reason to insist that [inventory searches] be conducted in a totally mechanical 'all or nothing' fashion. . . . The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment.").

The inventory taken here, included as Ex. B to Smyth's cross motion for summary judgment, R. Vol. I at Tab 30, is entirely consistent with the purposes of an inventory search, showing *inter alia*: engine, battery, radiator, generator, bumpers, stereo, seats, one gray wardrobe with clothing, boxes of miscellaneous books, sleeping bag, box of

miscellaneous papers, overnight bag with miscellaneous clothing and toiletry items, brown briefcase with miscellaneous legal documents, numerous cassette tapes, two Craig cassette records, one G.E. tape recorder, and miscellaneous bedding; plus, inventoried into the property section: a TI laptop computer, ac adapter, and computer mouse with miscellaneous cable, along with a brown briefcase with miscellaneous papers.

Mr. Smyth's other arguments with respect to the impound, the inventory not being conducted in the presence of the towing operator, the car being left unlocked, and so on, are meritless. We reject those and other arguments on the subjects of towing and inventorying substantially for the reasons set forth in the magistrate judge's recommendation. This conclusion applies as well to Mr. Smyth's speculation that his computer was searched because the battery was down.

### C. Bonding Procedures, Telephone, Delay in Bonding Out

In these and other contentions, including the issues discussed above, Smyth refers repeatedly to city procedures and various guidelines. As we have made clear, local ordinances, guidelines, regulations and even state statutes do not become part of the Constitution, so that any infraction of them proves that constitutional rights were violated. United States v. Price, 75 F.3d 1440, 1443-44 (10th Cir. 1996). The Fourth Amendment standard of objective reasonableness controls Fourth Amendment claims.

Substantially for the reasons set out in the magistrate judge's recommendation, we conclude that the district court did not err in granting summary judgment on claims relating to bonding procedures, use of the telephone, and whether it would have been possible for him to make bond an hour or two earlier than he did.

### D. Other Defendants, Conspiracy, Retaliation

Since the defendant officers did not violate Smyth's constitutional rights in having his car towed and stored and the contents inventoried, the towing company employees, who acted under the officer's direction, could not have done so. Nor did any other action by those employees, taken under color of state law, violate Smyth's constitutional rights. For the same reason--no constitutional violation--the city did not violate Smyth's rights under a failure to train theory, even assuming such a theory is properly pled.

Finally, Mr. Smyth's allegations of conspiracy, retaliation, improper motives, and so on also fail in view of the propriety of the official acts taken with respect to him here, and the speculative and conclusory nature of the claims. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

### E. Miscellaneous Issues

Mr. Smyth also assigns as error the district court's denial of: discovery, amendment to pleadings, a continuance to obtain expert witness reports, Rule 11

sanctions, discovery sanctions; and, the court's failure to address all of Smyth's contentions and his voluminous authorities. These are similar to arguments raised by Smyth in appeal No. 95-1026, which we rejected. We do so here as well. Our full review of the record convinces us that the district court did not err on any of these matters.

## CONCLUSION

We have carefully considered all of Mr. Smyth's arguments, and have reviewed the authorities he cites and the exhibits he submitted. As indicated above, we conclude that the district court did not err in dismissing Smyth's action. Furthermore, the similarity of the issues and arguments here to those raised in Smyth's prior civil rights claims against local authorities strongly suggest that, at the least, he is in fact bordering on an abuse of the right to proceed without prepayment of costs or fees.

AFFIRMED. The mandate shall issue forthwith.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge