**UNITED STATES of America, Plaintiff,**

v.

**James V. VERLIN, Defendant.**

**No. 97–40038–01–SAC.**

United States District Court,
D. Kansas.

Aug. 14, 1997.

Thomas G. Luedke, Office of U.S. Attorney, Topeka, KS, for Plaintiff.

J. Richard Lake, Holton, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On June 3, 1997, the United States filed a three count information charging James V. Verlin with one count of violating of 18 U.S.C. § 7(3), 16 U.S.C. § 668dd, and Title 50, Code of Federal Regulations § 27.31 (operation of a motorized vehicle in an area not designated for vehicle travel) (Count 1), one count of violating of 18 U.S.C. § 7(3), 16 U.S.C. § 668dd, and Title 50, Code of Federal Regulations § 27.41 (possession of a firearm without specific authorization) (Count 2), and one count of violating of 18 U.S.C. § 7(3), 16 U.S.C. § 668dd, and Title 50, Code of Federal Regulations § 27.73 (directing the rays of a spotlight for the purpose of spotting, locating and taking an animal) (Count

3). All of these charges arise out of events occurring on or about November 28, 1996, within the boundaries of the Flint Hills National Wildlife Refuge, a place within the special maritime or territorial jurisdiction of the United States.

This case comes before the court upon the following pretrial motions filed by the defendant (represented by Richard Lake):
1. Motion to dismiss (Dk. 6).[1]
2. Motion to suppress (Dk. 7).

The government opposes each motion. *See* (Dk. 8 and 9). On August 8, 1997, the court conducted a hearing to consider the defendant's motions. Based upon the need to obtain one witness, the hearing was continued until August 13, 1997. The court, having considered the arguments and briefs of the parties, the evidence presented, and the applicable law, is now prepared to rule.

### 1. Motion to dismiss (Dk. 6).

■ In this motion, the defendant primarily contends that he is "civilly dead" and therefore immune from federal prosecution. The defendant's motion takes its reader on the written equivalent of a roller coaster ride—a bumpy excursion characterized by precipitous falls and circuitous turns that ultimately takes the decipher no where. This fanciful pleading is simply an amalgam of nonsensical interpretations of the law that provide the defendant no solace.

As the government suggests, notwithstanding the defendant's purported "civil death," this court clearly has jurisdiction to hear and try federal offenses and has jurisdiction over the defendant. *See United States v. Dawes*, 874 F.2d 746, 749 (10th Cir.) ("Under 18 U.S.C. § 3231, federal district courts have exclusive jurisdiction over 'all offenses against the United States.' "), *cert. denied*, 493 U.S. 920, 110 S.Ct. 284, 107 L.Ed.2d 264 (1989). Contrary to the defendant's implicit suggestion, federal jurisdiction encompasses the State of Kansas. In short,

the defendant enjoys no immunity from federal prosecution. The defendant's motion to dismiss is denied.

### 2. Motion to suppress (Dk. 7).

The defendant asks the court to suppress evidence obtained by Thomas Leihsing, a civil process server employed by the Lyon County Sheriff's Department, a person who apparently observed Verlin's acts and actually confronted the defendant on the date of the alleged offense. The defendant contends that Leihsing is a state law enforcement officer and that because Leihsing was not authorized by federal statute to effectuate an arrest on federal property, the fruits of the "search and seizure" must be suppressed as violation of the Fourth Amendment.

The government responds, arguing that Leihsing is not a "government actor" and that he was only acting as a private citizen when he accosted Verlin. Consequently, it is the government's position that the Fourth Amendment is not implicated in this case.

In pertinent part, the government's brief states:[2]

The evidence would show that on or about November, 1996, Mr. Thomas Leihsing was bowhunting on private property near the border of the Flint Hill [sic] National Wildlife Refuge near Emporia, Kansas. As Mr. Leihsing was leaving his deer stand at twilight, he observed a vehicle drive down the road toward him and turn off into the refuge. He then noticed a spotlight shining along the trees bordering the corn field. The spotlight was coming from the vehicle he had earlier observed entering the field.

Mr. Leihsing entered his vehicle and went to investigate. He suspected the occupant of the vehicle to be engaged in the illegal activity of spotlighting deer. This is an illegal method of hunting deer wherein a spotlight is used to momentarily blind a

---

1. This motion was filed by the defendant himself.

2. Neither party presented any facts, other than by written proffer, regarding Leihsing's actual encounter with Verlin. The actual evidence offered centered on the issue of whether or not Leihsing was a "law enforcement officer."

The court has included the government's written proffer in its brief to provide some meaningful factual background to this case. Based upon the facts contained in Verlin's written proffer in his motion, the court assumes without deciding that at some point during their encounter, Leihsing "seized" Verlin and "searched" his person or property.

deer so they can be easily shot. As Mr. Leihsing approached the area he observed the vehicle leave the corn field area and return to the road. He followed the vehicle and flashed his bright lights in order to get the license tag number. The vehicle stopped in apparent response to the flashing of the lights.

The vehicle was a small pick-up truck with one occupant. Because he suspected that the occupant was engaged in illegal activity, Mr. Leihsing armed himself with a shotgun that he had in the car and approached the pick-up. The driver and sole occupant was the defendant James Verlin. At Mr. Leihsing's request the defendant exited the pick-up truck. Inside the truck Mr. Leihsing saw a spotlight, a high powered rifle and a handgun. None of this property was seized. After a brief discussion the two parted. Mr. Leihsing then reported this activity to local officers of the Kansas Fish and Wildlife Service.

The defendant apparently argues that the fact of the stop should be suppressed along with the observations of Mr. Leihsing. For the suppression of this evidence he relies on the fact that Mr. Leihsing was apparently not authorized by law to stop the defendant's vehicle. He argues, therefore, that all of Mr. Leihsing's observations should be suppressed and the stop should be non-event.

The Fourth Amendment's protection against unreasonable searches and seizures "is wholly inapplicable 'to a search or seizure even an unreasonable one, effected by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official.'" *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (quoting, *Walter v. United States*, 447 U.S. 649, 662, 100 S.Ct. 2395, 2404 65 L.Ed.2d 410 (1980) (Blackmun, J., dissenting)); see also *United States v. Leffall*, 82 F.3d 343, 347 (10th Cir.1996).

Mr. Leihsing was a private citizen acting on his own without any direction or participation by any law enforcement agency. He observed what he believed to be the illegal act of spotlighting and attempting to poach deer occurring on government property. Like a concerned citizen he became involved and went to investigate. His suspicions were confirmed by what he observed. He reported these observations to law enforcement officers.

### Federal Law

"In determining the reasonableness of a state search or seizure under the Fourth Amendment, we conduct an independent inquiry and apply federal law." *United States v. Richardson*, 86 F.3d 1537, 1544 (10th Cir. 1996) (citing *Elkins v. United States*, 364 U.S. 206, 223–24, 80 S.Ct. 1437, 1447–49, 4 L.Ed.2d 1669 (1960)). In the context of an illegal search, the Tenth Circuit has commented:

> The authority in a federal case for suppressing evidence due to an unlawful search is the Fourth Amendment to the Federal Constitution. *United States v. Mitchell*, 783 F.2d 971, 973, 974 (10th Cir.), cert. denied, 479 U.S. 860, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986); see 1 Wayne R. La-Fave, *Search and Seizure: A Treatise on the Fourth Amendment* 112–13 & nn. 77–79 (2d ed. 1987 & Supp.1995) (collecting cases). A violation of state law may or may not form the basis for suppression on Fourth Amendment grounds. None of our cases stand for a contrary proposition, nor could they.

*United States v. Price*, 75 F.3d 1440, 1443 (10th Cir.) (footnote omitted), cert. denied, —— U.S. ——, 116 S.Ct. 1889, 135 L.Ed.2d 183 (1996).

### Burden of Proof

"The proponent of a motion to suppress bears the burden of proof." *United States v. Madrid*, 30 F.3d 1269, 1274 (10th Cir.) (citing *United States v. Carr*, 939 F.2d 1442, 1446 (10th Cir.1991), cert. denied, 513 U.S. 1007, 115 S.Ct. 527, 130 L.Ed.2d 431 (1994); see *United States v. Moore*, 22 F.3d 241, 243 (10th Cir.), cert. denied, 513 U.S. 891, 115 S.Ct. 238, 130 L.Ed.2d 161 (1994). See *United States v. Carhee*, 27 F.3d 1493, 1497 (10th Cir.1994) ("As to the warrantless encounter, [the defendant] bears the burden of proving whether and when the Fourth Amendment was implicated (i.e., the point at which he or his luggage was 'seized').")).

## Analysis

In light of the evidence presented, the government's response to Verlin's motion to suppress is absolutely correct. The "search and seizure" challenged by Verlin occurred on the Flint Hills National Wildlife Refuge, property within the special maritime or territorial jurisdiction of the United States but located within Coffee County, an area obviously outside Lyon county. Contrary to the defendant's suggestion, even if Leihsing was a person defined as a "law enforcement officer" under Kansas law,[3] under Kansas law he would not automatically possess "statewide" law enforcement jurisdiction. K.S.A. 22–2401a, titled "Jurisdiction of certain law enforcement officers and of university police officers.", provides in pertinent part:

(1) Law enforcement officers employed by consolidated county law enforcement agencies or departments and sheriffs and their deputies may exercise their powers as law enforcement officers:

(a) Anywhere within their county; and

(b) in any other place when a request for assistance has been made by law enforcement officers from that place or when in fresh pursuit of a person.

No facts presented to this court suggest that Leihsing was, under any circumstance, a government actor at the time he encountered Verlin. There is no evidence that Leihsing even purported to be a government agent when he confronted Verlin. At the time he "seized" Verlin and "searched" Verlin's property, Leihsing was not an agent of either the state or federal government.[4]

The defendant correctly observes that Leihsing is a civil process server and an employ of Lyon county. However, at the time he "seized" Verlin and "searched" his property, he was not acting in any governmental capacity. Instead, Leihsing was only acting in his role as a private citizen. The mere fact that the Kansas code of civil procedure permits a person such as Leihsing to serve, levy and execute process, *see In re Marriage of Welliver*, 254 Kan. 801, 808, 869 P.2d 653 (1994), does not mean that every act taken by that person, no matter when or where, is automatically an act which would implicate the Fourth Amendment.

As no government actor participated in the "search and seizure" of Verlin or his property, his motion to suppress runs aground quickly.

The Fourth Amendment protects citizens from unreasonable searches and seizures by government actors. *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921). However, Fourth Amendment protection against unreasonable searches and seizures "is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.' " *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (quoting *Walter v. United States*,

---

**3.** Leihsing is not a law enforcement officer under Kansas law. *See* K.S.A. 22–2202(13) (" 'Law enforcement officer' means any person who by virtue of office or public employment is vested by law with a duty to maintain public order or to make arrests for violation of the laws of the state of Kansas or ordinances of any municipality thereof or with a duty to maintain or assert custody or supervision over persons accused or convicted of crime, and includes court services officers, parole officers and directors, security personnel and keepers of correctional institutions, jails or other institutions for the detention of persons accused or convicted of crime, while acting within the scope of their authority.").

Although not argued by the defendant, the court simply notes that the basic purpose of the Fourth Amendment " 'is to safeguard the privacy and security of individuals against arbitrary invasions by government officials.' " *Michigan v.*

*Tyler*, 436 U.S. 499, 504, 98 S.Ct. 1942, 1947, 56 L.Ed.2d 486 (1978) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730–31, 18 L.Ed.2d 930 (1967)), and that the protection afforded by the Fourth Amendment is not limited solely to government agents who bear the title of "law enforcement officer." *See Id.*

**4.** There is no argument or evidence that Leihsing was an agent of the federal government. In fact, in his written brief, Verlin actually appears to concede that Leihsing is a "private citizen," but nevertheless proceeds to argue that evidence obtained by Leihsing's acts should be suppressed as violative of the Fourth Amendment. Apparently in light of the government's written response, during oral argument Verlin no longer took the position that Leihsing was acting only as a private citizen when he was seized and searched by Leihsing.

447 U.S. 649, 662, 100 S.Ct. 2395, 2404, 65 L.Ed.2d 410 (1980) (Blackmun, J., dissenting)); *see also United States v. Leffall,* 82 F.3d 343, 347 (10th Cir.1996). However, in some cases a search by a private citizen may be transformed into a governmental search implicating the Fourth Amendment "if the government coerces, dominates or directs the actions of a private person" conducting the search or seizure. *Pleasant v. Lovell,* 876 F.2d 787, 796 (10th Cir. 1989). In such a case, the private citizen may be regarded as an agent or instrumentality of the police and the fruits of the search may be suppressed.

. . . . .

It is clear that if a government agent is involved "merely as a witness," the requisite government action implicating Fourth Amendment concerns is absent. *Leffall,* 82 F.3d at 347–48; *accord United States v. Coleman,* 628 F.2d 961, 965 (6th Cir.1980) (requiring more than the mere presence of a police officer to implicate the Fourth Amendment). In some affirmative way, the police must instigate, orchestrate, encourage or exceed the scope of the private search to trigger application of the Fourth Amendment. *See United States v. Lambert,* 771 F.2d 83, 89 (6th Cir.), *cert denied,* 474 U.S. 1034, 106 S.Ct. 598, 88 L.Ed.2d 577 (1985). As stated by the Ninth Circuit:

> While a certain degree of governmental participation is necessary before a private citizen is transformed into an agent of the state, *de minimis* or incidental contacts between the citizen and law enforcement agents prior to or during the course of a search or seizure will not subject the search to fourth amendment scrutiny.

*United States v. Walther,* 652 F.2d 788, 791 (9th Cir.1981).

*United States v. Smythe,* 84 F.3d 1240, 1242–43 (10th Cir.1996). No evidence suggests that Leihsing's actions were instigated or orchestrated by a government actor. Consequently, the Fourth Amendment is not implicated and there is no basis to suppress evidence of Leihsing's "search and seizure."

In sum, none of the facts alleged by the defendant serve as a basis for suppression. Verlin's Fourth Amendment rights were not implicated by Leihsing's acts. Verlin's motion to suppress is denied.

IT IS THEREFORE ORDERED that the defendant' Motion to dismiss (Dk. 6) and Motion to suppress (Dk. 7) are denied.