(180 P.3d 579)
No. 97,466

DAVID E. CORNELIUS, *Appellant*, v. KANSAS DEPARTMENT OF REVENUE DIVISION OF MOTOR VEHICLES, *Appellee*.

Opinion filed April 4, 2008.

*Pantaleon Florez, Jr.*, of Topeka, for appellant.

*Ted E. Smith*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before MARQUARDT, P.J., MALONE, J., and BRAZIL, S.J.

MARQUARDT, J.: David E. Cornelius appeals the district court's order affirming the Kansas Department of Revenue's (KDR) suspension of his driver's license. We affirm.

The relevant facts are undisputed. On November 24, 2004, Cornelius was stopped at a sobriety checkpoint a few miles outside of the Prairie Band Potawatomi Nation Reservation in Jackson County. The Jackson County Sheriff's Department was the authority responsible for arranging and operating the sobriety checkpoint. The Jackson County Sheriff's Department and the Prairie Band Potawatomi Tribal Police orally agreed that they would cooperate with one another in the operation of the checkpoint.

Cornelius refused to submit to a blood alcohol test and was issued multiple citations by Corporal Michael Boswell, an officer of the Prairie Band Potawatomi Tribal Police Department. Cornelius filed a motion to dismiss, claiming that Corporal Boswell lacked jurisdiction pursuant to K.S.A. 2004 Supp. 22-2401a(3)(a) to issue the citations. Cornelius claimed that officers employed by a Native American Indian Tribe (tribal police) may only exercise jurisdiction outside of their reservations if there is a valid written agreement for liability insurance coverage which waives tribal immunity and is verified by the attorney general. Cornelius argued that without a written insurance agreement, Corporal Boswell did not have jurisdiction to suspend his driver's license. In response, the KDR argued that the liability insurance provisions of K.S.A. 2004 Supp.

22-2401a(3) only apply where tribal police are acting on their own without an agreement with another law enforcement agency.

Following a hearing, the KDR suspended Cornelius' driver's license. The KDR relied in part on K.S.A. 2004 Supp. 22-2401a(3)(c), which provides: "Nothing in this subsection (3) shall be construed to prohibit any agreement between any state, county or city law enforcement agency and any Native American Indian Tribe."

Cornelius appealed this decision to the district court. The district court affirmed the KDR's ruling. Cornelius timely appeals.

Cornelius challenges the district court's ruling that the tribal officer had jurisdiction outside the reservation, arguing that it erred in its interpretation of K.S.A. 2004 Supp. 22-2401a(3)(a).

The standard of judicial review of a state administrative agency is defined by the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq. National Council on Compensation Ins. v. Todd*, 258 Kan. 535, 538, 905 P.2d 114 (1995). Under the KJRA, the scope of review is somewhat broader than the traditional scope of review. *Woman's Club of Topeka v. Shawnee County*, 253 Kan. 175, 180, 853 P.2d 1157 (1993). The KJRA has been applied to review administrative decisions in connection with appeals from the suspension of driver's licenses. See *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 782-83, 148 P.3d 538 (2006).

K.S.A. 77-621 states in part:

"(c) The court shall grant relief only if it determines any one or more of the following:

(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

(3) the agency has not decided an issue requiring resolution;

(4) the agency has erroneously interpreted or applied the law;

(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in

light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or
(8) the agency action is otherwise unreasonable, arbitrary or capricious."

On appeal, a district court is restricted to considering whether, as a matter of law, (1) the administrative agency acted fraudulently, arbitrarily, or capriciously; (2) the agency's administrative order is supported by substantial evidence; and (3) the agency's action was within the scope of its authority. *Lacy v. Kansas Dental Board*, 274 Kan. 1031, 1040, 58 P.3d 668 (2002). In reviewing a district court's decision of an agency's action, the appellate court must determine whether the district court followed the requirements and restrictions placed upon it, and then make the same review of the administrative agency's action as did the district court. *Jones v. Kansas State University*, 279 Kan. 128, 139, 106 P.3d 10 (2005).

Additionally, resolution of this issue involves statutory interpretation, which is a question of law over which this court has unlimited review. This court is not bound by the district court's interpretation. *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007).

K.S.A. 2004 Supp. 22-2401a(1)(b) provides that county and city law enforcement officers have jurisdiction within their respective county or city, and "in any other place when a request for assistance has been made by law enforcement officers from that place or when in fresh pursuit of a person." In 2004, the statute was amended to add subsection (3). L. 2004, ch. 180, sec. 5. Subsection (3) provides, in relevant part:

"(a) Law enforcement officers employed by a Native American Indian Tribe may exercise powers of law enforcement officers anywhere within the exterior limits of the reservation of the tribe employing such tribal law enforcement officer, subject to the following:

(i) The provisions of subsection (3)(a) shall be applicable only if such Native American Indian Tribe has entered into a valid and binding agreement with an insurance carrier to provide liability insurance coverage for damages assessed in state or federal court and arising from the acts, errors or omissions of such tribal law enforcement agency or officer while acting pursuant to this section. Such insurance policy shall be in an amount not less than $500,000 for any one person and $2,000,000 for any one occurrence for personal injury and $1,000,000 for any one occurrence for property damage and shall carry an endorsement to provide

coverage for mutual aid assistance. Such insurance policy shall be subject to verification by the attorney general. Such insurance policy shall include an endorsement providing that the insurer may not invoke tribal sovereign immunity up to the limits of the policy set forth herein.

(ii) The provisions of subsection (3)(a) shall be applicable only if such Native American Indian Tribe has filed with the county clerk a map clearly showing the boundaries of the Tribe's reservation as defined in this section.

. . . .

"(c) Nothing in this subsection (3) shall be construed to prohibit any agreement between any state, county or city law enforcement agency and any Native American Indian Tribe." K.S.A. 2004 Supp. 22-2401a(3).

Our courts have not yet interpreted K.S.A. 2004 Supp. 22-2401a(3). The case law analyzing the statute predates the 2004 amendment. Here, the district court noted, however, that its decision was supported by opinions of courts construing other provisions of 22-2401a, such as *United States v. Price*, 75 F.3d 1440 (10th Cir.), *cert. denied* 517 U.S. 1239 (1996).

*Price* involved a cooperative effort between the Kansas Bureau of Investigation (KBI) and the Shawnee County Sheriff's Department. The two agencies worked together to stage a drug buy and execute a search warrant in Osage County. The search warrant was signed by a Shawnee County district court judge. Price moved for suppression of the seized evidence, alleging that jurisdiction was lacking pursuant to 22-2401a because a Shawnee County law enforcement officer executed the search warrant in Osage County. The district court denied the motion, and Price was ultimately convicted of various drug charges.

On appeal, the Tenth Circuit Court of Appeals affirmed the district court, ruling that the active participation of the KBI in the execution of the search warrant cured any jurisdictional concerns: "Kansas law does not subdivide the authority of active participants executing a warrant. Where KBI agents conducted the search pursuant to statutory authority and a valid warrant, we will not parse the jurisdiction of the various officers involved nor base the suppression of evidence on any such analysis." 75 F.3d at 1443.

Here, the district court noted that the Jackson County Sheriff's Department, which was acting within its jurisdiction when it operated the sobriety checkpoint, specifically enlisted the assistance

of the Prairie Band Potawatomi Tribal Police Department. The district court also found that no additional writing requirement was required and held that "an oral agreement may suffice to establish a cooperative relationship between a tribal police force and another law enforcement agency."

The district court also distinguished *State v. Hennessee*, 232 Kan. 807, 658 P.2d 1034 (1983), *overruled in part on other grounds State v. Miller*, 257 Kan. 844, 896 P.2d 1069 (1995), from the facts of the instant case. In *Hennessee*, the court relied on K.S.A. 22-2401a (Ensley 1981) in holding that the Pratt County Sheriff acted beyond his authority in arresting the defendant at her residence in Stafford County. The court noted that under K.S.A. 22-2401a there are only two instances in which a sheriff may exercise his or her powers outside the sheriff's county: (1) when the sheriff is in " 'fresh pursuit' " of a person; or (2) when a request for assistance has been made by law enforcement officers from the area for which such assistance is requested. Since neither of these exceptions were applicable, the *Hennessee* court held that the officer was without jurisdiction to make the arrest. 232 Kan. at 809. The district court found *Hennessee* to be easily distinguishable from the facts in the instant case because the Prairie Band Potawatomi Tribal Police Department provided assistance at the request of the Jackson County Sheriff's Department.

Cornelius argues that the district court's reliance on *Price* is misplaced, as that decision was filed before the 2004 amendment to K.S.A. 22-2401a(3). He also contends that the district court improperly distinguished *Hennessee*.

Both *Price* and *Hennessee* predate the amendment in K.S.A. 2004 Supp. 22-2401a(3). The district court did not suggest that *Price* was directly on point; rather, the court reasoned that its decision was consistent with case law interpreting other provisions of 22-2401a. When construing statutes and determining legislative intent, courts must consider various provisions of an act in pari materia with a view of reconciling and bringing them into workable harmony if possible. *Pankratz Implement Co. v. Citizens Nat'l Bank*, 281 Kan. 209, 215, 130 P.3d 57 (2006). Due to the dearth

of case law interpreting 22-2401a(3), the district court's discussion of *Price* and *Hennessee* was both proper and necessary.

Corporal Boswell was accompanied by, and operating under the authority of, the Jackson County Sheriff's Department when he worked the sobriety checkpoint that brought him into contact with Cornelius. It is undisputed that the checkpoint was organized, managed, and controlled by the Jackson County Sheriff's Department. Under the rationale of *Price,* any jurisdictional concerns based on Corporal Boswell's presence were eliminated due to the requested participation of the Jackson County Sheriff's Department.

Cornelius' argument is further contradicted by the plain language of K.S.A. 2004 Supp. 22-2401a(3).

"The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.]" *Winnebago Tribe of Nebraska v. Kline,* 283 Kan. 64, 77, 150 P.3d 892 (2007).

As noted by the district court, Cornelius' interpretation of the statute would render subsection (3)(c) meaningless. As a general rule, courts should construe statutes to avoid unreasonable results and presume that the legislature does not intend to enact useless or meaningless legislation. *Hawley v. Kansas Dept. of Agriculture,* 281 Kan. 603, 631, 132 P.3d 870 (2006).

Moreover, the statute makes no mention that a document is required for a valid agreement between tribal police and another entity. See K.S.A. 2004 Supp. 22-2401a(1)(b), (2)(b), (6). To the contrary, our court has held that an oral agreement for assistance between the requesting sheriff and city police qualifies as a " 'request for assistance' " under 22-2401a(2)(b). *State v. Rowe,* 18 Kan. App. 2d 572, 574, 856 P.2d 1340, *rev. denied* 253 Kan. 863 (1993).

Corporal Boswell also had authority to issue the citation pursuant to K.S.A. 2004 Supp. 22-2401a(1)(a). This statute provides that "[l]aw enforcement officers employed by consolidated county law enforcement agencies or departments and sheriffs *and their dep-*

*uties* may exercise their powers as law enforcement officers . . . [a]nywhere within their county." (Emphasis added.)

A county sheriff has explicit authority to appoint deputies under K.S.A. 19-805(a). The KDR's hearing notes indicate that Corporal Boswell was deputized as a Jackson County officer by the acting sheriff on the night in question. Cornelius does not challenge Corporal Boswell's status as a deputy. Therefore, *United States v. Parada*, 289 F. Supp. 2d 1291 (D. Kan. 2003), provides persuasive authority for determining that Corporal Boswell had sufficient jurisdiction to issue the citation. In *Parada*, a federal district court upheld a traffic stop along Interstate I-70, outside of the city limits of Junction City, by a Junction City police officer. The officer had been assigned to a county-wide joint task force and had also been deputized by the Geary County Sheriff. The court reasoned that the officer "wore two hats: one of a city police officer and one of a deputy with the Geary County Sheriff's Department." 289 F. Supp. 2d at 1298. The court concluded that the officer properly exercised territorial jurisdiction under 22-2401a(1)(a) to execute the traffic stop. 289 F. Supp. 2d at 1298.

Therefore, we find that under K.S.A. 2004 Supp. 22-2401a(3), an agreement between a county sheriff's department and police officers of a Native American Indian Tribe gives the tribal police authority to act outside of their respective reservations.

When Corporal Boswell made contact with Cornelius at the sobriety checkpoint, he was both a tribal officer and a deputy with the Jackson County Sheriff's Department. Corporal Boswell, therefore, properly exercised jurisdiction under K.S.A. 2004 Supp. 22-2401a(1)(a).

The district court properly affirmed the KDR's ruling that Corporal Boswell had jurisdiction outside the Prairie Band Potawatomi Nation Reservation.

Affirmed.